No. 25,126.

GEORGE W. M. BELDON, a Minor, by his Next Friend, J. W. BELDON, *Appellee,* v. CHARLES A. HOOPER, *Appellant.*

#### SYLLABUS BY THE COURT.

1. NEGLIGENCE—*Inflammable Drugs Delivered to Fifteen-year-old Boy Unsafely Packed—Boy Burned—Druggist Liable for Only the Natural and Probable Consequences of His Neglience.* In an action for damages for negligence, the rule applied that a defendant's liability therefor only extends to damages which are the natural and probable consequence of his negligence and which could reasonably have been·anticipated to flow therefrom, and that his liability does not extend to extraordinary consequences which could not reasonably have been foreseen.

2. SAME—*Carbon Disulphide Delivered by Druggist to Fifteen-year-old Boy Unsafely Packed—Boy Burned—Negligence of Druggist Not the Proximate Cause of the Injury.* A druggist, at the telephone request of plaintiff's father, delivered to plaintiff, a lad nearly fifteen years old, two bottles of carbon disulphide such as the father was accustomed to purchase to destroy weevil in wheat in the father's elevator. The father was accustomed to furnish cartons into which such bottles of the liquid were placed and packed with excelsior. In this instance the druggist delivered the bottles to plaintiff without their being so packed. Plaintiff placed the bottles in a Ford car beside him. In driving about town one of the bottles was broken, and some of the contents spilled on plaintiff's person and clothes. According to all the evidence, the fluid would do the plaintiff no harm; but in some unknown way the liquid was set on fire and plaintiff was severely burned. *Held,* that the negligence of defendant in failing to pack the bottles in cartons and excelsior was not the proximate cause of the plaintiff's injury, nor was the plaintiff's injury a natural and probable consequence of defendant's negligence such as he could reasonably have anticipated.

Appeal from Barton district court, CLYDE R. DOUGLASS, judge. Opinion filed March 8, 1924. Reversed.

*Elrick C. Cole, William Osmond, D. A. Banta,* and *T. B. Kelly,* all of Great Bend, for the appellant.

*F. Dumont Smith,* of Hutchinson, and *R. C. Russell,* of Great Bend, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: This was an action for damages arising from the alleged negligence of the defendant, a druggist, in delivering to plaintiff, a boy nearly 15 years old, two bottles of carbon disulphide, ordered by the boy's father for the destruction of weevil in wheat.

Beldon v. Hooper.

The boy placed the bottles in the bed of a Ford car beside him. On driving about town one of the bottles was broken and the contents spilled on his person and on his clothes. The substance caught fire in some undisclosed way, and severely burned the plaintiff.

The petition charged defendant with negligence in that notwithstanding he knew the inflammable and dangerous character of the substance, and knew the necessity that it should be packed so that the bottles would not break and spill the contents, the defendant negligently—

"Failed and neglected to take the proper precaution to protect the liquid from escaping from the bottle, and to protect appellee from injury; that appellee was fourteen years of age, had no knowledge of the character, and dangerous nature of the liquid, or how the same should be packed to carry it, . . . that appllee placed the bottles in the front part of a Ford he was driving, and after proceeding two or three blocks the bottles tipped over, one of them broke, permitting the liquid to escape, and some of the liquid was splashed upon his clothing, particularly his stocking and trousers of his right leg, and upon his right hand; that the liquid took fire, and also set fire to the automobile and to the plaintiff's clothes."

Defendant's answer was a general denial, and an allegation that any injury sustained by plaintiff was due to his own fault and negligence and through no fault of defendant.

Jury trial, verdict and judgment for plaintiff.

Defendant contends that no negligence of defendant was shown as the proximate cause of the accident, and that plaintiff's injuries were caused by his own and his father's negligence.

The first of these contentions presents a question calling for the application of certain elementary principles of the law of torts—of damages for negligence. Broadly stated, a wrongdoer is liable for all the natural and probable consequences of his tortious or negligent acts or omissions. His liability extends to all the probable consequences which might reasonably have been anticipated. In the theory of probable consequence it is not necessary that the peculiar form of the result could or should have been foreseen. The test is whether some damage, some injury—not its particular character—could reasonably have been anticipated to flow from the tortious or negligent act or omission. But liability for negligent or tortious acts or omissions only extends to proximate consequences which are natural and probable and reasonably to be anticipated; it does not extend to consequences between which and the original tort or negli-

gence the causal connection is too remote or where the connection has been supplanted by some other intervening act or agency nearer to the consequence than the original tort or negligence, nor does it extend to extraordinary consequences which could not reasonably have been foreseen. If there be an intervening act or agency it is considered to be the proximate cause, and the original tort or negligence is considered as only a remote cause to which the consequence cannot be traced for the purpose of fixing liability. See excerpts from Pollock on Torts, and Cooley on Torts, in *Rodgers v. Railway Co.*, 75 Kan. 222, 88 Pac. 885.

With these elementary principles in mind, let us inquire just what was the negligence of the defendant? In prior sales of the carbon disulphide to plaintiff's father, the bottles containing it had been placed in pasteboard cartons with excelsior packing beneath and around them. The father had been accustomed to take the cartons back to defendant every time he needed another supply, but in this instance the father forgot to give the cartons to his son, and telephoned to the lad to go to defendant's store and get the fluid. The lad obeyed. Defendant's clerk gave the two bottles to plaintiff and he carried them out and placed them in the automobile. The defendant's negligence, therefore, stated in its strongest terms, was in delivering the bottles to plaintiff without seeing that they were placed in cartons and packed with excelsior. Now the natural and probable consequence of such negligence was that the bottles might be broken and the contents lost. Conceivably, though somewhat more remotely, it might have been anticipated that part of the contents of the bottles might be spilled on plaintiff's clothes or on his person. What further natural and probable consequences could reasonably have been anticipated? The only witness who knew anything about the qualities of the fluid testified:

"Dr. F. M. Russell:

"That carbon disulphide is a clear, volatile liquid; has the odor of rotten eggs; is distinctly irritant when applied to the skin; it evaporates very easily; is very inflammable; . . . that the liquid in question would catch fire if it came in contact with heated material; . . . and that it was considered a dangerous liquid to handle.

"Cross-examination:

"This liquid is not inflammable if rubbed on your hand or body; there would be no burn produced by rubbing it in that manner; that there was nothing about the liquid that man need to fear from simply having it spilled on him, and if the bottle had broken and the contents spilled onto the boy's clothes or stocking, that in itself would not have produced any burn; that to

Beldon v. Hooper.

do that it had to come into contact with heat, and that the heat of the sun would not do that in any event; that it had to be from a spark of some kind, or a very heated piece of steel or iron, or something of that kind, to make it combustible."

Perhaps, then, the defendant might be held to the responsibility of anticipating that the bottles might be broken and that some of the fluid might be spilled on plaintiff's clothes and person and that his skin would be irritated thereby; but that, according to Dr. Russell, would have caused him no harm; it would not harm his clothing; it would not catch fire and burn him because of anything inherent in the liquid.

Could the doctrine of probable consequences reasonably to be anticipated be still further extended? Should defendant have also anticipated that the bottles might be broken, that the contents might be spilled on plaintiff, and that then "a spark of some kind, or a very heated piece of steel or iron or something" might come in contact with the fluid on plaintiff's clothing and set it on fire and thus injure the plaintiff? Were all these successive incidents the natural and probable consequence of defendant's negligence which might reasonably have been anticipated?

On principle and precedent the court feels constrained to answer in the negative. The consequences were altogether too remote to be traced to the defendant's failure to pack the bottles in cartons and excelsior. The proximate cause of plaintiff's injury, was some intermediate agency which caused the fire, "a spark, a very heated piece of steel or iron, or something of that kind," and not the remote negligence of the defendant in failing to see that the bottles were packed in cartons and excelsior, nor the similar remote negligence of the father in forgetting to send the cartons with the plaintiff as he was accustomed to do when purchasing supplies of the liquid.

In *Railroad Co. v. Justice*, 80 Kan. 10, 101 Pac. 469, the syllabus reads:

"Negligence or other unintentional wrong does not furnish a foundation for a cause of action for damages unless it was the proximate cause of the injury sustained.

"The proximate cause of an injury is that cause which, in natural and continuous sequence, unbroken by any efficient intervening cause, produces the injury, and without which the result would not have occurred.

"If two distinct causes are successive and unrelated in their operation, one of them must be the proximate and the other the remote cause. In such case, the law regards the proximate as the efficient and responsible cause, and disregards the remote."

In *Cleghorn v. Thompson,* 62 Kan. 727, 731, 64 Pac. 605, where defendant was shooting at dogs with a rifle, the bullet was deflected and struck and killed plaintiff's husband. In stating the liability for consequences of negligence, the rule was declared:

"'One is answerable in damages for the consequences of his faults only so far as they are natural and proximate, and may therefore have been foreseen by ordinary forecast, and not for those arising from a conjunction of his own faults with circumstances of an extraordinary nature.'"

In *Railway Co. v. Columbia,* 65 Kan. 390, 69 Pac. 338, the action was for damages for the death of a railway fireman who was killed by the derailment of his engine. The negligence charged was the piling of grain doors near the track. These were used in freight cars to be loaded with grain. One night a gale blew some of them on the track, resulting in the derailment of the engine and consequent death of the fireman. It was held that the intervening cause, the gale of wind, was the proximate cause and that the negligent piling of the grain doors was too remote for liability to be traced thereto. The court said:

"While one is responsible for such consequences of his fault as are natural and probable, and might therefore be foreseen by ordinary forecast, if his fault happened to concur with something extraordinary and therefore not likely to be foreseen, he will not be answerable for the extraordinary result. (Citing cases.)

"In cases of this character where two distinct, successive causes, unrelated in operation, to some extent contribute to an injury, it is settled that where there is an intervening and direct cause, a prior and remote cause cannot be made the basis for recovery of damages, if such prior cause did no more than furnish the condition, or give rise to the occasion, by which the injury was made possible. . . .

"Measured by authority, determined upon principle, or viewed in the light of the instructions of the court to the jury, which of the two distinct, successive causes operating independently of each other to produce the injury, that is, the place and manner of piling and keeping the grain doors, or the severe gale, must be held to have been the consequent, efficient and proximate cause of the injury? Manifestly, it must be said that the place and manner of piling and keeping the doors did no more than furnish the condition, afford the opportunity, for the accident which occurred. The operation of the successive, wholly independent and unrelated cause and intervening agency, the severe gale, was the consequent, efficient and proximate cause of the grain doors' being upon the track, which resulted in the derailment of the engine and damage to plaintiff." (pp. 398, 402.)

In an excerpt from *Stone v. Boston & Albany Railroad,* 171 Mass. 536, quoted in *Clark v. Powder Co.,* 94 Kan. 268, 273-274, 146 Pac. 320, it was said:

"The question is not whether it was a possible consequence, but whether it was probable, that is, likely to occur, according to the usual experience of mankind. That this is the true test of responsibility applicable to a case like this has been held in very many cases, according to which a wrongdoer is not responsible for a consequence which is merely possible, according to occasional experience, but only for a consequence which is probable, according to ordinary and usual experience. One is bound to anticipate and provide against what usually happens and what is likely to happen; but it would impose too heavy a responsibility to hold him bound in like manner to guard against what is unusual and unlikely to happen, or what, as it is sometimes said, is only remotely and slightly probable. A high degree of caution might, and perhaps would, guard against injurious consequences which are merely possible; but it is not negligence, in a legal sense, to omit to do so." (p. 273.)

The case of *Gas Co. v. Dabney*, 79 Kan. 820, 101 Pac. 488, in its essential aspects was analogous to the present case. The gas company was charged with the negligent shooting of an oil and gas well without taking proper precautions to control the gas and oil which could reasonably have been anticipated to flow from the well after it was shot with dynamite. The oil flowed out of the well, over and about the plaintiffs' drilling tools and machinery; and about an hour thereafter, in some unknown manner a spark or fire of some sort exploded the oil and gas which had escaped from the well, which resulted in the burning of plaintiff's tools and machinery. It was held that the negligence of the gas company was no more than a remote cause of the explosion, and that the proximate cause was the unknown but certain agency which had set fire to the gas and oil, and which in turn had burned the plaintiff's property. The court said:

"It is obvious that there must have been some intervening, direct cause for the explosion; the escaping gas must necessarily have come in contact with fire. The evidence does not disclose, nor does the petition allege, what was the direct cause. The explosion may have been brought about by a stroke of lightning, or by the merest accident, or by the intentional or careless act of some person for whose conduct the defendants were in no way responsible." (p. 824.)

The court conceded:

"That the defendants were negligent in failing to cap the well and connect it with a tank to receive the oil and gas, still, unless it can be said that the explosion and fire were the natural and probable consequences of the failure of the defendants to do these things, they can not be held responsible. The most that can be said is that, if any or all the acts of the defendants taken together constituted negligence, the negligence must be regarded as the prior or remote cause; and if these prior causes 'did nothing more than furnish the condition, or give rise to the occasion, by which the injury was made possible'

(*Railway Co. v. Columbia,* supra) they can furnish no basis for the recovery of damages. . . .

"Here the plaintiffs make no attempt to explain the manner in which the oil and gas came in contact with fire, and even offer proof showing that there was no fire in close proximity. It is therefore conclusively established that some intervening agency necessarily combined with the alleged negligent acts of the defendants to produce the injury, and, whatever its nature may have been, that it was not related to the prior or remote cause. The general verdict of the jury is therefore not conclusive, and the questions must be determined by the court." (pp. 825, 829.)

And so here. Conceding the negligence of defendant in failing to pack the bottles of carbon disulphide in cartons and excelsior, whereby one of the bottles was broken and its contents spilled on plaintiff's clothes, this negligence did not cause the burning. The burning was caused by the unforeseen intervening and efficient agency of "a spark of some sort or a very heated piece of steel or iron" which made the fluid combustible. This unknown but nevertheless certain origin of the fire was the proximate cause of plaintiff's injury—an extraordinary consequence which defendant could not reasonably have anticipated, and for which he cannot be subjected to liability. (*Gas Co. v. Dabney,* supra, syl. ¶ 1.)

*Colwell v. Parker,* 81 Kan. 295, 105 Pac. 524; *Miller v. Armour & Co.,* 95 Kan. 195, 200, 147 Pac. 1093; *Simon v. Telephone Co.,* 97 Kan. 42, 154 Pac. 242; *Norris v. Ross Township,* 98 Kan. 394, 161 Pac. 582.)

The foregoing renders it unnecessary to consider the other point urged by defendant.

The judgment of the district court is reversed and the cause remanded with instructions to enter judgment for defendant.

HARVEY, J. (concurring specially): The difficulty I have with this case is to see that there was any negligence on the part of the defendant. A druggist is held to a high degree of care in compounding medicines and filling prescriptions, and if, carelessly or willfully, he uses a harmful drug where a harmless one was prescribed, or one with inferior medical properties, and injury results from the use of such negligently compounded prescription, he is liable for the damages sustained. Druggists, as well as dealers in oils, explosives, or any commodity which might cause damage if improperly used or handled, are held to the degree of care commensurate with the nature of the commodities sold, and if, carelessly or willfully, they mislabel an article or deliver a dangerous one when a harmless one

Grocery Co. v. Ridgeway.

was ordered, they are held to be negligent in so doing and to be liable for the damages caused by such negligence. But no such question is presented in this case. A different rule applies when the purchaser is sold the article he calls for. (9 R. C. L. 705; 19 C. J. 781.) When a purchaser goes to a dealer and says he wants to buy a certain article, and asks no questions about its properties or how to handle it or to use it, the dealer is justified in assuming that the purchaser knows some legitimate use for it and that he knows enough about its properties to be able to get it home and to handle it and to use it without injury. There is no reason why this is not true of carbon disulphide, just as it is with hundreds of other articles which will cause injury if improperly handled, many of which are sold daily in bottles, if in liquid form, or simply wrapped in paper or put in paper cartons, if dry.

Since there was no negligence on the part of defendant—for the evidence brings it clearly within the rule above stated—there is no need for controversy over the subsequent question of whether defendant's negligence was the proximate cause of the injury. Therefore, I concur in the order reversing the case and directing that judgment be entered for defendant.

JOHNSTON, C. J., dissenting.