No. 40,995

Faith Steele, *Appellant*, v. J. C. Rapp, *Appellee*.

(327 P. 2d 1053)

Opinion filed July 7, 1958.

*James R. Schaefer*, of Wichita, argued the cause, and *Paul V. Smith*, *Douglas E. Shay* and *Leo R. Wetta*, all of Wichita, were with him on the briefs for appellant.

H. E. *Jones*, of Wichita, argued the cause, and A. W. *Hershberger, Richard Jones, Wm. P. Thompson, Jerome E. Jones, William E. Palmer, Robert L. NeSmith* and *Justus H. Fugate*, all of Wichita, were with him on the briefs for appellee.

The opinion of the court was delivered by

SCHROEDER, J.: This is a damage action for personal injuries sustained by the plaintiff when a bottle of fingernail polish remover, sold by the defendant to the plaintiff's employer, ignited and exploded. Two causes of action are alleged, the first based on negligence and the second on breach of implied warranty. The trial court sustained demurrers to both the first amended petition and the second amended petition, following which an appeal was duly perfected to this court from those orders.

The questions involved are: (1) Is the second amended petition barred by the statute of limitations? and (2) Does the second amended petition show on its face an intervening cause which, as a matter of law, prevents the negligence of the defendant from being the proximate cause of the plaintiff's injuries?

The appellant, a resident of Sedgwick County, Kansas, filed this action in the district court of Sedgwick County on the 7th day of February, 1957, against the appellee, also a resident of Sedgwick County, engaged in the business of distributing and selling preparations and supplies for beauty shops, under the trade name of the Service Beauty & Barber Supply Company, with his place of business at 122 North St. Francis, Wichita, Kansas.

The portions of the second amended petition material herein are relatively brief and a full disclosure of these allegations will serve to indicate the facts and give the precise nature of the pleading under attack. The following is alleged under the first cause of action omitting allegations which relate to damages:

"3. Among the products sold by the defendant to beauty shops in Wichita and vicinity on and prior to February 10, 1955, was a liquid product known as Kenra Finger Nail Polish Remover.

"4. That on February 10, 1955, the plaintiff, Faith Steele, was employed as a beauty operator at a beauty shop known as Russel's East Beauty Salon, located at 2822 East Douglas Avenue, Wichita, Kansas, and at approximately 1:45 o'clock p. m. on that day, she was severely burned and seriously and permanently injured, as hereinafter set forth, when a gallon bottle of Kenra

Finger Nail Polish Remover broke and the liquid ignited and exploded and caused a fire at said beauty shop, as the result of the negligence of the defendant as hereinafter set forth. *At the time the said gallon bottle broke it was being handled by Loretta Jamison, another beauty operator employed at Russel's East Beauty Salon. She was pouring some Kenra Finger Nail Polish Remover from said gallon bottle into a smaller container for use at her manicure desk, and said gallon bottle broke when dropped by her several inches to the floor.*

"5. The Kenra Finger Nail Polish Remover which ignited and exploded and caused the injuries to the plaintiff, as previously alleged, was sold by the defendant to Russel's East Beauty Salon in a one gallon glass bottle sometime shortly prior to February 10, 1955. Said Kenra Finger Nail Polish Remover was sold by the defendant for the purpose of being used by operators employed at Russel's East Beauty Salon in the course of their work for the purpose of removing fingernail polish from the fingernails of customers. The defendant had full knowledge when he sold said bottle containing said product to Russel's East Beauty Salon that it would be handled and used by the employees there in the course of their work, *and that they would pour. said product from said gallon bottle into smaller containers for use at their manicure desks,* and the defendant owed a duty to such employees to sell said product in a safe container, and to give notice or warning by an appropriate label or otherwise of any imminently or inherently dangerous quality of such product, all of which the defendant neglected and failed to do, as hereinafter set forth.

"6. Such Kenra Finger Nail Polish Remover was a highly inflammable and explosive substance. *This fact was unknown to the plaintiff and to the said Loretta Jamison, but* was known or should have been known by the defendant. Nevertheless, the defendant sold and distributed said Kenra Finger Nail Polish Remover in fragile glass gallon bottles, *which he knew or should have known would break, so that the liquid might ignite and explode, if dropped several inches by persons handling them, and* which were not labeled or marked in any way to show or give warning that the contents were so inherently and imminently dangerous and explosive.

"7. The proximate cause of the explosion and fire which occurred at Russel's East Beauty Salon on February 10, 1955 and of the injuries sustained by the plaintiff, Faith Steele, in such explosion and fire, was the negligence of the defendant which consisted of each of the following acts or omissions, to-wit:

"(*a*) Distributing and selling a product, Kenra Finger Nail Polish Remover, which it was dangerous to use in the manner in which the defendant knew, or should have known, that it would be used.

"(*b*) Distributing and selling a product which was imminently and inherently dangerous, without giving notice by an appropriate label or otherwise of its dangerous quality.

"(*c*) Failure to use a safe container for a product which the defendant knew, or should have known, was a highly inflammable and explosive substance." (Emphasis added.)

The second cause of action incorporated the facts alleged in the first, except Paragraph 7, and alleged that the defendant ". . . did impliedly warrant that said Kenra Finger Nail Polish Remover was reasonably safe to be handled and used, in the glass bottles in which it was sold, by employees at beauty shops in the course of their work, and did impliedly warrant that such product was not an imminently or inherently dangerous or explosive substance, and did impliedly warrant that it could be handled and used by employees at beauty shops in the course of their work without their sustaining injuries." Other appropriate allegations were made relative to this cause of action.

The original petition did not specifically allege who was handling the bottle of fingernail polish remover in question and in what manner it was being used at the time it was broken and ignited. The defendant filed a motion to require the plaintiff to make the petition definite and certain in this respect, which motion was sustained in part by the court. The plaintiff complied with this order by filing her first amended petition, which incorporated the required additions in Paragraphs 4 and 5, but otherwise followed the original petition.

The defendant demurred to the first amended petition, which was partially argued to the court on the 6th day of May, 1957, at which time the argument was continued to the 13th day of May, 1957. During the argument on the 13th day of May, 1957, on the foregoing demurrer to the first amended petition, the plaintiff with permission of the court filed her second amended petition. Subsequent thereto on the 21st day of August, 1957, the trial court sustained the demurrer to the first amended petition. On August 23, 1957, the defendant demurred to the second amended petition on the ground that it was barred by the statute of limitations and further that it failed to state a cause of action in favor of the plaintiff and against the defendant. This demurrer was sustained on the 9th day of September, 1957.

Although the appeal is from the ruling on both demurrers, appellant takes the position that the ruling on the demurrer to the first amended petition is moot, in view of the second amended petition.

The only changes made in the second amended petition involved Paragraphs 5 and 6. In the first amended petition the italicized

words in Paragraphs 5 and 6 of the second amended petition were omitted. No other changes were made.

It is contended by the appellee that the appellant acquiesced in the court's ruling on the demurrer to the first amended petition by filing the second amended petition and by reason thereof the demurrer to the first amended petition is not subject to review. Appellee then states that the second amended petition is barred by the statute of limitations.

It is clear from the facts that the trial court prior to ruling upon the demurrer to the first amended petition granted the plaintiff, appellant herein, leave to file a second amended petition. Under these circumstances the effect of filing the second amended petition was to render the demurrer to the first amended petition moot and the trial court should so have considered it. It was impossible for appellant to acquiesce in the court's ruling on the demurrer to the first amended petition by filing a second amended petition prior to the ruling of the court on the first amended petition.

Is the second amended petition barred by the statute of limitations?

The original petition was filed within the statutory period of two years and, although the second amended petition was filed after two years from the date of the injuries, it does not set up any new cause of action. In fact, the intervening cause alleged, which is the principal contention in this appeal, was not apparent in the original petition. The additional allegations made in the second amended petition are only an enlargement and amplification of the allegations of the original petition.

The rule applicable to this situation is clearly stated in *Smith v. LaForge,* 170 Kan. 677, 228 P. 2d 509, (Syl. § 1) as follows:

"Where a petition alleges a cause of action but does so imperfectly and with insufficient detail, and the additional allegations of an amended petition are only an enlargement and amplification of the averments of the original by setting out more definitely that which was previously imperfectly pleaded and do not set up a new cause of action, the fact that the statute of limitations has run when the amended petition is filed is not a bar to recovery, for in such a case the amended petition relates back to the date of filing of the original one."

This rule has been followed in later cases. (*Talbott v. Farmers Union Co-op Elevator,* 174 Kan. 435, 256 P. 2d 856; *Maddox v. Neptune,* 175 Kan. 465, 264 P. 2d 1073; *Hoffman v. Hill,* 175 Kan.

826, 267 P. 2d 526; *Sundgren v. Topeka Transportation Co.*, 178 Kan. 83, 283 P. 2d 444; and *Miller v. Broce-O'Dell Concrete Products*, 182 Kan. 77, 318 P. 2d 1072.)

Does the second amended petition show on its face an intervening cause which, as a matter of law, prevents the negligence of the defendant from being the proximate cause of the plaintiff's injuries?

The position taken by the appellant is that the issue of proximate cause, under the allegations of the second amended petition, is one of fact for the jury; and that the petition does not show on its face an intervening cause which, as a matter of law, prevents the negligence of the defendant from being the proximate cause of the plaintiff's injuries. This is the only attack made upon the ruling of the trial court that the second amended petition fails to state a cause of action.

The position of the appellee is based wholly upon the doctrine of an independent efficient intervening cause. It is urged that the dropping of the bottle by Loretta Jamison (alleged in Paragraph 4) was an efficient cause which intervened to shield the defendant from the consequences of his alleged negligence.

The contentions of the parties present a question calling for the application of certain elementary principles of the law of torts—of damages for negligence. The applicable principles and rules applied to similar cases have been liberally treated by this court in discussing and reviewing many decisions in the opinions of the following cases: *Clark v. Powder Co.*, 94 Kan. 268, 146 Pac. 320 L. R. A. 1915 E 479, Ann. Cas. 1917 B 340; *Beldon v. Hooper*, 115 Kan. 678, 224 Pac. 34; *Rowell v. City of Wichita*, 162 Kan. 294, 176 P. 2d 590; *Shideler v. Habiger*, 172 Kan. 718, 243 P. 2d 211; and *Hickert v. Wright*, 182 Kan. 100, 319 P. 2d 152. Reference is made to these opinions as a basis for further discussion herein.

It would serve no purpose to unduly extend this opinion by discussing a greater number of our former cases involving situations more or less similar to this one. The doctrine of remote and proximate cause is well established, and the difficulty in this case does not arise from a dispute as to abstract principles or rules laid down in the cases, but in appraising the facts of this case and in determining what rules are applicable. It will be sufficient here to limit our considerations in large part to the cases upon which the parties principally rely.

The appellant stresses *Clark v. Powder Co.*, supra; *Rowell v. City*

*of Wichita,* supra; *Flaharty v. Reed,* 167 Kan. 319, 205 P. 2d 905; *Phillips v. Doyle,* 167 Kan. 376, 207 P. 2d 465; *Noel v. Menninger Foundation,* 175 Kan. 751, 267 P. 2d 934; and *Emmerich v. Kansas City Public Service Co.,* 177 Kan. 443, 280 P. 2d 615.

The underlying principle in these cases upon which appellant relies is well stated in *Rowell v. City of Wichita,* supra, as follows:

". . . the rule that the causal connection between an actor's negligence and an injury is broken by the intervention of a new, independent and efficient intervening cause, so that the actor is without liability, is subject to the qualification that if the intervening cause was foreseen or might reasonably have been foreseen by the first actor, his negligence may be considered the proximate cause, notwithstanding the intervening cause. (*Clark v. Powder Co.,* 94 Kan. 268, 146 Pac. 320, L. R. A. 1915 E 479, Ann. Cas. 1917 B 340; *Fraser v. Railway Co.,* supra.) It has also been held that one who negligently creates a dangerous condition cannot escape liability for the natural and probable consequences thereof, although the innocent act of a third person may have contributed to the final result. See *Crow v. Colson,* 123 Kan. 702, 256 Pac. 971, 53 A. L. R. 457, where it was said:

" 'Where defendant knows or has reasonable means of knowing that consequences not usually resulting from the act are likely to intervene so as to occasion damage, he is liable although it be not an ordinary and natural consequence of the negligence.' . . ." (p. 303.)

In *Clark v. Powder Co.,* supra, an agent of the defendant company left a quart of *solidified glycerine* lying near an oil well. A workman, unskilled in the *use of explosives,* saw it, and in an effort to prevent injury to himself and his fellow workmen, removed it to an abandoned graveyard where he placed it in a crevice in a stone wall. Two years later some children found the glycerine, struck it on a rock and caused an explosion in which they were injured. A judgment for the plaintiff was affirmed. The court rejected the contention that the intervening act of the workman in moving the glycerine prevented the negligence of the defendant from being the proximate cause of the injuries. The case was presented to this court on appeal after a full trial and judgment in the lower court. The court in Syllabus ¶ 2 said:

"The owner of so inherently dangerous a commodity as solidified glycerine is required to exert the highest degree of care to keep it in close custody to prevent its doing mischief, and that duty never ceases; and such owner is liable for all the natural and probable consequences which flow from any breach of that duty."

The court further said in the opinion at page 276:

"Here we reach the crux of the matter. No new power of doing mischief was communicated to the solidified glycerine by the acts of young McDowell.

The power of doing mischief was inherent in the glycerine all the time. That some terrible accident was likely to happen in letting it out of the close custody of some one skilled in its use was not only natural and probable but almost inevitable. McDowell had no skill or experience in handling the dangerous article. He did the best he could to prevent the damage impending on account of Van Gray's negligence. That he attempted to prevent its doing damage, but failed on account of lack of sufficient knowledge to dispose of it effectively, does not amount to an unrelated and efficient agency to shift the proximate cause from the delict of the powder company to a new proximate cause of his own making.

"It may be said, however, that this is mere argument. If so, then the question clearly resolves itself into one of fact for the jury; and this is in harmony with the authorities."

The case of *Stone v. Boston & Albany Railroad,* 171 Mass. 536, 51 N. E. 1, was quoted extensively in the *Clark* case where this court recognized that the Supreme Court of Massachusetts had spoken with such accuracy and precision that its ideas are settled law. The Supreme Court of Massachusetts there said in the opinion:

". . . The question is not whether it was a possible consequence, but whether it was probable, that is, likely to occur, according to the usual experience of mankind. That this is the true test of responsibility applicable to a case like this has been held in very many cases, according to which a wrongdoer is not responsible for a consequence which is merely possible, according to occasional experience, but only for a consequence which is probable, according to ordinary and usual experience. One is bound to anticipate and provide against what usually happens and what is likely to happen; but it would impose too heavy a responsibility to hold him bound in like manner to guard against what is unusual and unlikely to happen, or what, as it is sometimes said, is only remotely and slightly probable. A high degree of caution might, and perhaps would, guard against injurious consequences which are merely possible; but it is not negligence, in a legal sense, to omit to do so." (p. 541.)

This excerpt was quoted in *Clark v. Powder Co.,* supra; and also in *Beldon v. Hooper,* supra.

*Clark v. Powder Co.,* supra, is recognized as a leading case. The test there recognized as running through all the precedents in analogous cases was stated to be: "Is the injury or damage the natural and probable consequence of the original negligence? . . . " The mere intrusion of an intervening agency does not always excuse the original wrongdoer.

In *Rowell v. City of Wichita,* supra, the plaintiff, a paying patron at an amusement event, was injured at Lawrence Stadium in the City of Wichita, when a beverage bottle fell or was thrown and hit her on the head. It was there held error for the lower court to sustain a demurrer to the amended petition which was filed against

the city, the lessee of the stadium and a catering company which had the concession there. The court said concerning the allegations of the petition that the negligence of the defendants in permitting the sale and delivery of the bottles and allowing them to become vagrant in the stadium furnished the first step, and the fall of the bottle, whether pushed or thrown, was the second step, not only reasonably to be anticipated but known to the defendants to have occurred previously according to the allegations of the petition. The court in discussing proximate cause as applied to cases of this type there made an extensive summary of cases in this jurisdiction which are accumulated and cited. The court there recognized that the proximate or legal cause of an injury is ordinarily a question for the jury. The rules concerning proximate cause as applied to cases of this type were succinctly stated as follows:

"The proximate cause of an injury is that cause which in natural and continuous sequence, unbroken by any efficient intervening cause, produces the injury and without which the injury would not have occurred, the injury being the natural and probable consequence of the wrongful act.

"Natural and probable consequences are those which human foresight can anticipate because they happen so frequently they may be expected to recur.

"Where the actor knows or has reasonable means of knowing that consequences not usually resulting from the act *are likely to intervene* so as to occasion damage, he is liable although it be not an ordinary and natural consequence of the negligence.

"Two or more events may combine and concur to produce a result and both be a proximate cause." (Syl. ¶¶ 7, 8, 9 and 10.) (Emphasis added.)

In *Flaharty v. Reed*, supra, the court held that a demurrer to a petition, alleging that the defendant's automobile was illegally parked on a highway at night without lights, was properly overruled. The plaintiff was walking along the highway, and another automobile struck the defendant's parked automobile, and drove it into the plaintiff, injuring him. It was contended that the parked automobile only created a condition and that the act of the driver of the other automobile was an intervening cause which prevented the illegal parking of the defendant's automobile from being the proximate cause of the plaintiff's injuries. Rejecting this contention, it was said that the defendant should have foreseen the possibility of a collision. The court stated in the syllabi:

"If an intervening act was foreseen or might reasonably have been foreseen by the first actor, his negligence may be considered the proximate or legal cause of the injury, notwithstanding the intervening act.

"It is not a necessary element of negligence that one charged with it should have been able to anticipate the precise injury sustained.

"There is no precise formula for marking the line between proximate and remote consequences following a negligent act, and ordinarily the questions of negligence, including proximate cause, and whether an alleged intervening cause could have been foreseen or anticipated by the exercise of ordinary prudence and foresight, are for the jury." (Syl. ¶¶ 3, 4 and 5.)

The case of *Phillips v. Doyle,* supra, is somewhat similar to the present case on its facts. The defendants operated a service station and sold a farmer, who ordered kerosene, what turned out to be a mixture of gasoline and kerosene. After the mistake was discovered, the defendants' employee went to get the mixture, and while removing it he tripped and fell overturning a lantern and spilling the mixture. It ignited and set the house on fire, badly burning the plaintiff who was in another room of the house. The defendants on appeal conceded that appellate review was limited to the sufficiency of plaintiff's evidence and a verdict for the plaintiff was affirmed by this court. The defendants contended that there was no negligence involved in the tripping and falling of their employee, and that this was an intervening cause, so that the negligent mixture and sale of the gasoline and kerosene was not the proximate cause of the plaintiff's injuries. This contention was rejected by the court, relying upon *Flaharty v. Reed,* supra.

In *Noel v. Menninger Foundation,* supra, it was held error for the lower court to sustain a demurrer to the amended petition in an action for personal injuries by a mental patient of the defendant, who alleged that the defendant was negligent in failing to restrain him and prevent him from going into a street, where he was struck by a truck. The court rejected the defendant's contention that its negligence could not be the proximate cause of the plaintiff's injuries because of the intervening act of the truck driver. The principles of law there held applicable in ruling a demurrer lodged against a petition were stated by the court in the syllabi to be:

"Two or more events may combine and concur to produce a result and both be a proximate cause.

"A cause is concurrent if it was a cause which was operative at the moment of injury and acted contemporaneously with another cause to produce an injury and was an efficient cause in the sense that without it the injury would not have occurred.

"If two distinct causes are successive and unrelated in operation they cannot be concurrent, but if the intervening cause was foreseen or might reasonably have been foreseen by the first actor, his negligence may be con-

sidered the proximate cause, notwithstanding the intervening cause." (Syl. ¶¶ 1, 2 and 3.)

In *Emmerich v. Kansas City Public Service Co.*, supra, an action was brought by the passenger of a streetcar and the court affirmed a judgment against both defendants, the streetcar company and the owners of a store. The store owners were hauling mud out of their basement after the 1951 flood and left a chain they were using in the process across the streetcar tracks. A streetcar struck and severed the chain, and a loose end flew into the air and struck and broke the window where the plaintiff was sitting in the streetcar, causing her injuries. The jury found the owners of the store guilty of negligence in leaving the chain extended across the tracks without a proper warning device. The jury found that the combined negligence of both defendants was the proximate cause of plaintiff's injuries. Rejecting the store's contention that its negligence was not the proximate cause of the plaintiff's injuries because of the intervening negligence of the streetcar company, this court relied on its earlier decisions and said:

". . . the rule that the causal connection between the actor's negligence and an injury is broken by the intervention of a new, independent and efficient intervening cause, so that the actor is without liability, is subject to the qualification that if the intervening cause was foreseen or might reasonably have been foreseen by the first actor, his negligence may be considered the proximate cause, notwithstanding the intervening cause. . . ." (p. 451.)

It has been recognized that where two or more causes, both or all of which are a proximate cause, combine and concur to produce a result, and injury to an innocent third party would not have occurred except for the concurrent negligence of such other actors, those whose acts united in producing the injury will be held jointly and severally liable to the injured party. (*Noel v. Menninger Foundation*, supra; and *Emmerich v. Kansas City Public Service Co.*, supra.)

The appellee relies principally on *Shideler v. Habiger*, supra; *Hickert v. Wright*, supra; *Railway Co. v. Columbia*, 65 Kan. 390, 69 Pac. 338; *Railroad Co. v. Justice*, 80 Kan. 10, 101 Pac. 469; *Beldon v. Hooper*, supra; *DeBauge v. DeBauge*, 143 Kan. 880, 57 P. 2d 31; and *Gas Co. v. Dabney*, 79 Kan. 820, 102 Pac. 488.

The case of *Beldon v. Hooper*, supra, is a leading case advanced by appellee as supporting his position in the instant case. Other cases cited by appellee, decided prior to this decision, are reviewed

and discussed by the court in the opinion, and further review of them will not be undertaken. There a druggist, at the telephone request of plaintiff's father, delivered to the plaintiff, a lad nearly fifteen years of age, two bottles of carbon disulphide, such as the father was accustomed to purchase to destroy weevil in wheat in the father's elevator. The father was accustomed to furnish cartons into which such bottles of liquid were placed and packed with excelsior. In this instance the druggist delivered the bottles to the plaintiff without packing them with excelsior. The plaintiff placed the bottles in a Ford automobile beside him, and in driving about town one of the bottles was broken spilling some of the contents on plaintiff's person and clothing. According to all the evidence, the fluid would do the plaintiff no harm; but in some unknown way the liquid was set on fire and plaintiff was severely burned. The court there held the negligence of the defendant in failing to pack the bottles in cartons and excelsior was not the proximate cause of the plaintiff's injury, nor was the plaintiff's injury a natural and probable consequence of defendant's negligence such as could reasonably have been anticipated by him. The proximate cause of plaintiff's injury was said to be some intermediate agency which caused the fire, "a spark of some kind, or a very heated piece of steel or iron, or something of that kind," and not the remote negligence of the defendant in failing to see that the bottles were packed in cartons and excelsior, nor the similar remote negligence of the father in forgetting to send the cartons with the plaintiff as he was accustomed to do when purchasing supplies of the liquid. In several respects this case differs from the instant one. The case was tried to a jury and the appeal was from the verdict and judgment. It did not arise upon a demurrer to the petition as in the instant case. No reference is made to the specification of error in the opinion. There was expert testimony to the effect that while the carbon disulphide was inflammable, it would first have to be exposed to heat before it would ignite, but that heat from the sun would be insufficient. There was other evidence to the effect that the plaintiff's father was well aware of the inflammable nature of the liquid, and in connection with former purchases had taken precautions, but had failed to advise plaintiff of the volatile nature of the carbon disulphide or the proper method to handle it. The father's failure to warn and advise the plaintiff was recognized as negligence by the court on the part of the father, but was classi-

fied as that of the defendant's negligence, as "remote," and not the proximate cause of the injury. The holding was that the defendant could not have reasonably anticipated that the liquid would come into contact with heat, and therefore his negligence in delivering the carbon disulphide was a remote, and not the proximate cause of the injury.

Ordinarily, as indicated by the cases upon which appellant relies, the question whether a negligent act is the proximate or efficient cause of an injury is one for the jury. Where, however, it is either admitted, or established by the facts as found, that two distinct successive causes, unrelated in their operation, conjoin to produce a given injury, the question of remote and proximate cause becomes one of law for the decision of the court, and not a question of fact for determination by a jury. The cases cited by the appellee embody this underlying principle, whether stated in the opinions or not.

In the instant case the demurrer concedes the truth of the allegations in the second amended petition. It concedes that as the result of the act of Loretta Jamison, an employee of the beauty shop, the gallon bottle of fingernail polish remover broke and the liquid ignited and exploded and caused a fire at the beauty shop; that the defendant had full knowledge when he sold the product to the beauty shop that it would be handled and used by the employees in the course of their work; and that they would pour the fingernail polish remover from the gallon bottle into smaller· containers for use at their manicure desks. It further concedes that the defendant did not sell the fingernail polish remover in a safe container or give notice or warning by an appropriate label or otherwise of an imminently or inherently dangerous quality of such product. It admits that the fingernail polish remover was a highly inflammable and explosive substance which was unknown to the plaintiff and to Loretta Jamison, but was known or should have been known to the defendant.

The divergent opinion of courts and jurists on the subject of proximate and remote cause in the law of negligence are exemplified by the leading case of *Palsgraf v. Long Island R. R. Co.,* 248 N. Y. 339, 162 N. E. 99, 59 A. L. R. 1253, in which two legal titans, Justices Cardozo and Andrews, arrived at opposite conclusions concerning the law of causation. Justice Cardozo, who wrote the majority opinion, concluded that in order to establish the de-

fendant's liability for its negligent acts, the plaintiff must not only show that her injuries were caused by defendant's wrongful conduct, but that such conduct could have been reasonably apprehended to have resulted in plaintiff's injuries. It was said in the opinion:

". . . One who jostles one's neighbor in a crowd does not invade the rights of others standing at the outer fringe when the unintended contact casts a bomb upon the ground. The wrongdoer as to them is the man who carries the bomb, not the one who explodes it without suspicion of the danger . . ." (p. 343.)

The same may be said of the instant case upon the pleaded facts; the unintentional dropping of the bottle of volatile fluid, even if negligent of itself, does not relieve the defendant of his initial and primary liability for his negligence in placing in commerce a highly inflammable and explosive substance and failing to warn or advise users of the inherently dangerous character of the apparently innocuous substance sold and delivered to the beauty shop, when the defendant knew or should have known of its dangerous characteristics and should have reasonably apprehended that it would explode and burn if not handled with great care by employees of the beauty shop.

A case analogous on the character of negligence alleged in the case at bar is *G. C. P. Fire Relief Assn. v. Sonneborn Sons* [1934], 263 N. Y. 463, 189 N. E. 551. The plaintiff insurance company paid a fire loss and brought an action under its right of subrogation. The insured, a farmer, employed a contractor to construct a water tank, who in turn purchased a water proofing preparation manufactured by the defendant. The preparation labeled as "Hydrocide # 889" when applied to the interior of the tank gave off fumes which came into contact with the flame in an ordinary farm lantern used to light the interior of the concrete tank, and an explosion resulted destroying the insured barn adjacent thereto by fire. In answer to questions the jury found the preparation was an inherently dangerous commodity, and under the circumstances—where the defendant had full knowledge that the contractor was using the secret preparation for the first time to try it out and that the contractor did not know anything about it—the defendant was negligent in selling the product to the contractor without giving notice to the users of the preparation that it was inflammable and should not be brought into contact with an open flame. A judgment for

the plaintiff was held proper. The court of appeals said in the opinion:

"Here the manufacturer knew or should have known that the preparation was to be used by employees of the corporation purchaser in an inclosed structure . . .

"The manufacturer also knew or should have known that the preparation contained fifty-two per cent of benzine and six and seven-tenths per cent of kerosene and was inherently dangerous if exposed to an open flame in an inclosed structure . . .

"With that knowledge which it had or should have had, it shipped the preparation, knowing the purpose for which it was to be used, without disclosing by label or otherwise the danger of using it in an inclosed structure near an open flame, . . .

"Since the manufacturer knew or should have known that the preparation was highly inflammable, the jury was justified in finding that it should have reasonably anticipated that it might be used near an open flame which would cause an explosion and fire . . ." (pp. 468, 469.)

It was further said in the opinion at page 472:

"As Hydrocide No. 889, manufactured by defendant, was a secret, highly explosive preparation, imminently dangerous to life and property, sold without warning of its dangerous nature, intended to be used in the condition it was in when delivered and was used for the purpose for which it was recommended in a way that should have been reasonably anticipated, we believe that the defendant manufacturer is legally responsible for the damage to property which resulted from its use."

For emphasis, we repeat, this is a demurrer to the second amended petition. It admits the truth of the *facts* well pleaded. The substance in question is described in the second amended petition as "Kenra Finger Nail Polish Remover" and is alleged to be "highly inflammable and explosive" and also "inherently and imminently dangerous and explosive." The character of the product as such is admitted. It is probable, if the fingernail polish remover described is actually lacquer thinner which is commonly used for removing fingernail polish, evidence will be adduced at the trial to establish that the product sold by the defendant was not of the character alleged. In fact, evidence may develop the case into a situation presented by the facts in *Beldon v. Hooper*, supra, which would ultimately control the decision.

In conclusion it may be stated that upon the admitted facts alleged the negligence of the defendant was operative at the moment of plaintiff's injury and acted contemporaneously with the negligent act of Loretta Jamison, an employee of the beauty shop,

and was an efficient cause in the sense that had the plaintiff and Loretta Jamison been advised of the highly inflammable and explosive character of the fingernail polish remover, proper precautionary measures could have been taken to safely handle the product; or had the defendant delivered the fingernail polish remover in a safe container the explosion would never have occurred. Under these circumstances the consequence of the negligent acts of the defendant in creating the dangerous condition was natural and probable, or likely to occur, according to reasonable experience of mankind. The intervening cause might reasonably have been anticipated by a prudent person in defendant's position.

We hold that the second amended petition does not show on its face an intervening cause which, as a matter of law, prevents the negligence of the defendant from being a proximate cause of the plaintiff's injuries. It follows that the trial court should have overruled the defendant's demurrer to the second amended petition.

The judgment of the trial court is reversed with directions to proceed with the cause in accordance with the views expressed in this opinion.

PARKER, C. J., dissents.

SCHROEDER, J. (dissenting): In cases of this kind courts draw an uncertain and wavering line between negligent acts which are a proximate cause of injury and damage and results which are too remote from the cause. Courts endeavor to make a rule in each case that will be practical and in keeping with the general understanding of mankind, always directing attention to the fact that it is a question of *fair judgment*.

But for the fact that the defendant sold the fingernail polish remover in a one gallon glass bottle to Russel's East Beauty Salon, the plaintiff would not have been injured. This, however, is not the test of liability in a negligence case. Proof of negligence in the air, so to speak, will not do. Negligence is the absence of care according to the circumstances. Negligence involves a relationship between man and his fellows. Negligence is not actionable unless it involves the invasion of a legally protected interest, the violation of a right. In every instance, before an act is said to be negligent, there must exist a duty to the individual complaining, the observance of which would have averted or avoided the injury.

The plaintiff who sues his fellowman sues for a breach of duty owing to himself. The victim does not sue derivately, or by right of subrogation, to vindicate an interest invaded in the person of another.

One who drives at a reckless speed through a crowded city street is guilty of a negligent act and, therefore, of a wrongful act irrespective of the consequences. It is wrongful in the sense that it is unsocial, but wrongful and unsocial to other travelers only because the eye of vigilance, sometimes referred to as the prudent person, perceives the risk of damage. If the same act were to be committed on a speedway or a race track, it would lose its wrongful character. The risk reasonably to be perceived defines the duty to be obeyed, and risk imports relation; it is risk to another or to others within the range of apprehension. (*Palsgraf v. Long Island R. R. Co.*, 248 N. Y. 339, 162 N. E. 99, 59 A. L. R. 1253; and Seavey, Negligence, Subjective or Objective, 41 Harv. L. Rev. 6.) Negligence, like risk, is thus a term of relation.

Similarly, in the instant case, the defendant did not sell fingernail polish remover in bulk quantities to the public generally; he sold it in bulk as a supplier to another business, a beauty shop. To repeat, negligence is the absence of care according to the circumstances. What are the circumstances?

The allegations of the petition under consideration in a sense belie themselves. At the threshold of any case like this is the general rule that as against a demurrer the petition of the plaintiff is entitled not only to the benefit of the facts pleaded, which must be taken as true, but to all reasonable inferences that may be derived therefrom. (*Cassity v. Brady*, 182 Kan. 381, 321 P. 2d 171, and cases therein cited.) Under rules here applicable the second amended petition before the court is subject to a liberal construction. The indulgence of the court to supply reasonable inferences from the well pleaded facts, however, does not permit the court to supply an allegation totally absent. While it is alleged that the plaintiff and Loretta Jamison did not know Kenra Finger Nail Polish Remover was a highly inflammable and explosive substance, there is *no allegation that the defendant knew* or should have known *these beauty operators did not know the character of this product.*

The plaintiff is bound by the allegations that the product in question, a chemical, is "highly inflammable and explosive" and also "inherently and imminently dangerous and explosive."

It is specifically alleged that the product known as Kenra Finger Nail Polish Remover was *sold* by the defendant, engaged in the business of distributing and selling preparations and supplies for beauty shops; that the product in question *was sold to Russel's East Beauty Salon, an establishment engaged in business as a beauty shop;* and although the petition does not specifically state the ownership thereof, it will be assumed for purposes of discussion hereafter that Russel is the owner of the beauty shop. It is further alleged that the *plaintiff and Loretta Jamison were employed as beauty operators at the beauty shop* in question, and that they were so employed and working in the beauty shop at the time Loretta Jamison dropped the gallon bottle of Kenra Finger Nail Polish Remover to the floor as she was pouring the product from the gallon bottle into a smaller container for use at her manicure desk, as a result of which the gallon bottle broke and the liquid ignited and exploded causing plaintiff's injury.

Everyone is presumed to know the law. The statutory laws of this state applicable to beauty shops and beauty operators indicate that the business or occupation is subject to strict regulation.

Among other things G. S. 1949, 65-1904a, provides that any licensed cosmetologist or person desiring to establish a *beauty shop* shall make application for a certificate of registration to the board of registration and examination for cosmetologists. The board is required to inspect the equipment and premises as to safety and sanitary condition for compliance with the sanitary regulations of the state board of health and regulations of the state board of registration for cosmetologists. This shop license or certificate of registration must be renewed annually.

Applicable definitions are set forth in G. S. 1949, 65-1902, as follows:

"The occupations of cosmetologist and apprentice, as applied in this act, shall be defined as follows: (a) For the purpose of this act, the term cosmetologist shall be designated as the occupation which includes the practice known as 'hair dresser,' 'beauty culturist,' 'cosmetician,' and 'manicurist.' 'Cosmetologist' is a person who, for profit, by any means or manner, does or performs any one or more of the following: (1) Arranges, dresses, permanent curls, curls, waves, singes, cleanses, dyes or bobs the hair; (2) massages, cleanses, stimulates, or manipulates, or performs similar work on, the scalp, face, neck, arms, hands, bust or upper part of the body with the hands or mechanical or electrical appliances; (3) makes use of cosmetic preparations, antiseptics, lotions, creams or other preparations in performing any one or more of the practices described in clauses (1) and (2) of this section; (4)

manicures the nails of the hands or removes superfluous hair from the face or any part of the body; or (5) any other beautifying process on any person: *Provided,* Any person who practices the manicuring of the nails only is defined as a 'manicurist.' (*b*) 'Apprentice' is a person engaged in learning or acquiring any of the arts and practices of the occupation of cosmetologist, as herein defined, within a duly registered school, or under the immediate direction and supervision of a registered cosmetologist, who, preparing for occupation of cosmetologist, shall practice as such apprentice for twelve (12) months, and who, preparing for occupation of manicurist, shall practice as such apprentice for two (2) months, when such apprentice shall be eligible for examination: *Provided,* That no apprentice shall be allowed to make any charge for his services: . . ."

Under the foregoing statute it is clear that plaintiff and Loretta Jamison are not apprentices. It is immaterial whether these beauty operators are actually "cosmetologists" or "manicurists" for purposes of ruling the demurrer.

The provisions of G. S. 1949, 65-1901, make it unlawful for any person to follow the occupation of cosmetologist or manicurist or to conduct schools teaching such occupation in this state unless he or she shall be the holder of a certificate of registration as provided for in the act.

G. S. 1955 Supp., 65-1903, makes provision for registered schools in the state where the occupation of cosmetologist may be taught or acquired. It provides that the instructors be duly registered in the practices they teach and licensed as instructors. The statute requires a course of training of not less than 1,000 hours of instruction and practice in preparation for the occupation of cosmetologist, covering a period of six months' continuous training and 150 hours of instruction and practice in preparation for the occupation of manicurist.

Under G. S. 1955 Supp., 65-1904, an applicant for a certificate of registration must make application to the board of registration for cosmetologists and if found to be duly qualified to practice the occupation of cosmetologist or manicurist upon examination shall be issued a certificate of registration.

The defendant supplying beauty shops, and in particular Russel's East Beauty Salon, was entitled to assume that Russel, and the beauty operators he employed, observed these laws and by reason thereof Russel was licensed to operate the business and his beauty operators held certificates of registration as cosmetologists or manicurists and had completed the prescribed course of study in their occupation. Until the defendant had actual knowledge to the con-

trary, he could not have been negligent in this assumption. By the same token, defendant was entitled to assume that the beauty operators employed by Russel, including this plaintiff and Loretta Jamison, by reason of their course of study knew the precise characteristics of the chemical products or preparations which they used in their occupation; that they were fully aware of the dangers and uses of these chemicals, including "Kenra Finger Nail Polish Remover," both in handling the product itself and in using it upon patrons of the beauty shop. It is not alleged that this was a new product purchased by Russel in his beauty shop for the first time as in *G. C. P. Fire Relief Assn. v. Sonneborn Sons* [1934], 263 N. Y. 463, 189 N. E. 551. Under these circumstances, where defendant was entitled to assume that the plaintiff and Loretta Jamison knew the character of this imminently dangerous and inherently explosive product, the failure of the defendant to label or otherwise give notice of the dangerous quality of the product could not have been a proximate cause of plaintiff's injury.

The allegation, that plaintiff and Loretta Jamison did not know that Kenra Finger Nail Polish Remover was a highly inflammable and explosive substance, is no more than an allegation under the circumstances that they were negligent. Whether such negligence of the plaintiff was a proximate cause need not be determined, since the defendant has not raised the question of contributory negligence in the lower court or on appeal. It matters not that the plaintiff may have overpleaded her cause of action. If the fingernail polish remover possessed the characteristics here alleged the beauty operators are presumed to have knowledge of it so far as this defendant is concerned under the allegations of the second amended petition.

If Russel did not comply with the law and hired beauty operators who were not licensed or schooled in their occupation, and permitted them to use an imminently dangerous and inherently explosive product in their occupation on the person of individuals patronizing his beauty shop, or handle it themselves, without himself instructing them as to the character of the product, his conduct would be a culpable act or omission of greater magnitude than simple negligence. In this event it would be an independent efficient intervening cause of the plaintiff's injury. (*Hickert v. Wright*, 182 Kan. 100, 319 P. 2d 152.) Since the defendant has not raised any question concerning the conduct of Russel, the decision need not rest on this point.

For purposes of ruling this demurrer the defendant in his brief concedes that selling the fingernail polish remover in a one gallon glass container was negligence. The defendant contends that the act of Loretta Jamison in dropping the bottle to the floor, which caused it to break, was an independent efficient intervening cause, and as such shielded the defendant from the consequences of his alleged negligence.

It may reasonably be inferred from the allegations of the second amended petition that delivery of the product in question was safely made from the defendant's place of business to the beauty shop. Russel through his employees and agents safely came into the full custody, possession, control and ownership of this imminently dangerous and inherently explosive product at his place of business.

Is the defendant obligated to anticipate that Russel to whom he sold the product in bulk, and who by reason of the purchase became the *owner* of the product in question for use in his beauty shop, would not exert the highest degree of care, both himself and by and through his employees and agents, to keep the product in close custody to prevent its doing mischief? Under the circumstances heretofore related, where Russel was accustomed to the use of the product in his business by and through beauty operators holding certificates of registration in their occupation, a prudent person in defendant's position would not have so anticipated. The defendant was entitled to assume that Russel, the owner of this product, would safely handle and use this product, since such duty is imposed upon Russel by law.

Applying the rule in *Clark v. Powder Co.*, 94 Kan. 268, 146 Pac. 320, L. R. A. 1915 E 479, Ann. Cas. 1917 B 340, Russel, the owner of so inherently dangerous a commodity as Kenra Finger Nail Polish Remover, was required to exert the highest degree of care to keep it in close custody to prevent its doing mischief, and that duty never ceased; and Russel as such owner is liable for all the natural and probable consequences which flow from any breach of that duty.

The purpose in stating Russel's obligation is not to show him liable under the second amended petition, but to show that the defendant was entitled to assume and rely on Russel, who acquired ownership of the product for use in his business, to exert the highest degree of care both himself and by and through his employees

and agents. Thus, the negligent act of Russel's beauty operator, Loretta Jamison, in dropping the bottle which caused it to break, is an independent efficient intervening cause of plaintiff's injury and damage, and the defendant's negligence in selling the product in a glass bottle is a remote cause for which no liability attaches. In other words, the negligent act of the defendant supplied the condition, but it was not the proximate cause of plaintiff's injury. (*Hickert v. Wright*, supra; and 38 Am. Jur., Negligence, § 68, pp. 724, 725.)

On the facts and circumstances here presented by the second amended petition this is a stronger case than *Beldon v. Hooper*, 115 Kan. 678, 224 Pac. 34, where safe delivery of carbon disulphide in two glass bottles was not even made to the father for use in his business by his fifteen-year-old son, the plaintiff. There the negligent act of the druggist in failing to pack the two glass bottles of carbon disulphide in cartons with excelsior was held to be a remote cause of plaintiff's injury and damage. One bottle broke while the son was making delivery and the contents spilled on his person and clothing in the automobile. The liquid was set on fire and plaintiff severely burned. The proximate cause was said to be some intermediate agency which caused the fire, "a spark of some kind, or a very heated piece of steel or iron, or something of that kind." A review of the case is more fully set forth in the court's opinion.

Many similarities to the instant case are found in *Cruzan v. Grace*, 165 Kan. 638, 198 P. 2d 154, where the court held the petition demurrable on the ground that it stated an intervening act of a third party entirely unrelated to any of the alleged acts of the defendants. The plaintiff was employed to work as a ranch hand on a 2,000-acre ranch where the defendants' business consisted of farming, ranching and divers agricultural pursuits, which work required the handling of horses. *The petition failed to allege that plaintiff was inexperienced as a ranch hand or in the handling of horses,* and the court said that *it must be assumed the plaintiff was familiar with the general nature and character of the work he agreed to perform.* A three-year-old horse that was touchy and inclined to run, in fact, did run away when a double-tree fell off the tongue of the wagon and hit the young horse on the heels. The plaintiff alleged that it was negligence for one of the defendants to direct the plaintiff to harness up a team of horses, one of which, unknown to the plaintiff, was untamed and unbroken to work and of the age

of three years. He further alleged that unknown to the plaintiff, some employee had left a double-tree unfastened on the tongue of the wagon. The latter was held to allege an independent, intervening and efficient cause of the accident which was the negligence of a fellow servant.

While the court recognized the general rule that a servant assumes the work risks and dangers of his employment, including that of the negligence of a fellow servant, the decision did not rest on this point. It was said in the opinion:

". . . although it is alleged appellee did not know the horse was unbroken and susceptible to running away *there is no allegation he did not recognize its age; nor is it alleged he could not have discovered the alleged facts in the exercise of reasonable diligence;* he had been on the ranch approximately three weeks; the facts stated describe a situation not at all uncommon to ranch life and one with which the ordinary ranch hand is quite familiar; *the facts alleged inhere in the work appellee agreed to perform; they were within the range of his knowledge and were such as would naturally call for observation and inquiry by a prudent ranch hand.*

. . . . . . . . . . . . .

"In the instant case, we, however, have an additional fact. While it is not alleged as clearly as it might have been the petition is open to the construction the untamed horse was one of the horses appellee was ordered to use by one of his employers. If that be true, and on demurrer it is admitted, we would hesitate to say appellee did not have a right to assume the horse was broken and reasonably safe to be used.

"It is not necessary to rest the instant decision on the question whether, under these circumstances, appellee assumed the risks incident to handling horses. Under the allegations of the petition it does not appear the horse ran away because it was young and unbroken. The petition squarely alleges a subsequent, independent and intervening cause which caused the horse to run . . ." (pp. 640, 641.) (Emphasis added.)

A material distinction in *Rowell v. City of Wichita,* 162 Kan. 294, 176 P. 2d 590, is the allegation in the petition that vagrant bottles left in the stadium by the defendants, which would fall or be thrown, *was known to the defendants to have previously occurred.*

While one is bound to anticipate and provide against what usually happens and what is likely to happen, it would impose too heavy a responsibility to hold him bound in like manner to guard against what is unusual and unlikely to happen, or what, as it is sometimes said, is only remotely and slightly probable. A high degree of caution might, and perhaps would, guard against injurious consequences which are merely possible, but it is not negligence, in a legal sense, to omit to do so. (*Stone v. Boston & Albany Railroad,*

171 Mass. 536, 51 N. E. 1; *Clark v. Powder Co.,* supra; and *Beldon v. Hooper,* supra.)

It is respectfully submitted that the trial court should be affirmed.

PRICE, J., dissenting: I am in general accord with what is said in the dissenting opinion of Mr. Justice Schroeder, but wish merely to add these few words:

In my opinion the allegations of the second amended petition are subject to but one construction—and that is that the sole proximate cause of plaintiff's injuries was the negligence of her fellow employee in dropping the gallon bottle to the floor. The demurrer was properly sustained.

JACKSON, J., concurring: Mr. Justice Schroeder has done well a difficult task imposed upon him by the unusual rule of this court. Certainly, we of the majority should at least add an "Amen." I shall include also only a short collect.

The question has been definitely narrowed to one of whether the alleged negligence of the defendant in this case appears in the second amended petition as the possible proximate cause of the plaintiff's injury or whether the act of Loretta Jamison in dropping the fragile glass bottle containing a gallon of "highly inflammable and explosive substance" must be said, as a matter of law, to have been an independent, *immunizing and insulating cause,* thus relieving defendant of responsibility. It is suggested in the dissenting opinions of our brothers Schroeder and Price that Loretta Jamison, the person who is alleged to have dropped the bottle, cannot be assumed to have been innocent of the nature of the fluid in the bottle. Be that as it may, Loretta is not the plaintiff in this case.

With apologies to the late Joseph H. Beale, the situation can be put in this fashion: The defendant has put a force in motion (the container of nail polish remover); did he understand, or should he have reasonably foreseen, that his force would act upon or be acted upon by another force over which he had no control (here, someone handling the bottle and possibly dropping it) and thereby cause injury? If there should have been reasonable foresight of the independent force and of the resulting injury or of injury of some kind, then defendant's force remained the proximate cause of the injury.

In G. S. 1949, 31-207, it is said, in part:

"That the state fire marshal shall make rules and regulations for the keeping, storage, use, manufacture, sale, handling, transportation, or other disposition of highly inflammable materials, gunpowder, dynamite, crude petroleum or any of its products, explosive or inflammable fluids or compounds, tablets, torpedoes, or any explosives of a like nature or any other explosive including fireworks and firecrackers, and may prescribe the materials and construction of receptacles and buildings to be used for any of said purposes . . ."

Article 5 of the regulations of the state fire marshal deals with the labeling of containers for inflammable cleaning fluids.

G. S. 1949, 21-2438, defines a criminal offense as follows:

"Grocers, druggists and all other vendors of gasoline in quantities of two hundred and fifty gallons or less are hereby required to put all gasoline by them hereafter kept for sale or sold in a red can, tank, barrel, or other receptacle, which receptacle shall be labeled "gasoline"; and vendors of kerosene in quantities of two hundred and fifty gallons or less shall not put kerosene in any red can, tank, barrel, or other receptacle."

What danger was foreseen in the above statutes and regulations?

It would seem safe to suppose, at least as a matter of pleading, that defendant could foresee, or should have foreseen, that someone handling a gallon of "highly inflammable and explosive" fluid might likely drop the fragile glass bottle and thereby cause injury. It would seem that the likelihood of such injuries occurring has led to the above regulations as to containers of inflammable fluids.

Many of the authorities have been cited in the majority and dissenting opinions. Two fairly recent cases involving situations in which defendant's "force" was acted upon by the independent forces of other persons may be found in *Smith v. Kroger Grocery & Baking Co.*, 339 Ill. App. 501, 90 N. E. 2d 500, 20 A. L. R. 2d 1; and *Hatch v. Small*, 249 Wis. 183, 23 N. W. 2d 460.

In my opinion, the ruling of the district court sustaining a demurrer to the second amended petition in the case at bar should be reversed.