No. 36,681

ERMA L. ROWELL, *Appellant,* v. THE CITY OF WICHITA, HENRY M. HELGERSON, HERMAN A. OSMENT and J. ALLEN BRAZILL, as Individuals and Co-partners doing business under the name of THE WICHITA CATERING COMPANY and THE THOMAS HOPKINS POST No. 4 of THE AMERICAN LEGION, *Appellees.*

(176 P. 2d 590)

Opinion filed January 25, 1947.

*Fred Hinkle,* of Wichita, argued the cause and was on the briefs for the appellant.

*William A. Tinker,* of Wichita, argued the cause, and *Glenn Porter, Getto McDonald, Arthur W. Skaer, Hugh P. Quinn,* all of Wichita, and *Fred W. Aley,* city attorney, were with him on the briefs for appellees City of Wichita, Helgerson, Osment and Brazill.

*Robert R. Hasty,* of Wichita, argued the cause and was on the briefs for appellee Thomas Hopkins Post No. 4 of The American Legion.

The opinion of the court was delivered by

THIELE, J.: This was an action wherein plaintiff sought to recover damages from three alleged joint tortfeasors for personal injuries sustained. The demurrer of the defendants to plaintiff's amended petition was sustained, and she appeals, assigning the ruling as error.

The amended petition, hereafter called the petition, consumes twelve printed pages in the abstract, and an attached exhibit consumes nine more pages. An analysis of the petition and exhibit discloses the following allegations, as shown by numbered paragraphs:

1. Plaintiff lives in Wichita, Kan.

2. The defendant city of Wichita is a municipal corporation.

3. The defendants Helgerson, Osment and Brazill are partners doing business under the name of The Wichita Catering Company.

4. The defendant, The Thomas Hopkins Post No. 4 of the American Legion, is a corporation.

5. For brevity the defendants are referred to as the city, the partnership and the post.

6. On September 7, 1945, plaintiff filed her written claim for damages in the office of the city clerk of the city and transmitted copies to the partnership and the post. A copy of the claim is attached as an exhibit.

7. The city owned Lawrence Stadium, composed of a large number of concrete seats in vast rows, one above another, seating approximately twelve thousand persons in such manner as to overlook a vast field where entertainments and games may be presented. The city frequently leased the stadium for rent to organizations such as the post.

8. On February 21, 1944, the partnership entered into a contract with the city to engage in selling mild beverages and food to persons congregated in the stadium. Under the agreement the city received 32½ percent of the gross sales, and in no event less than $11,000 per year, and during the period the partnership was granted

the sale and exclusive privilege of selling such beverages and food. Plaintiff does not have a copy of the contract and more definite detail cannot be set out, but the terms and provisions of the contract are definitely known to all of the defendants.

9. On June 26, 1945, the city leased the stadium to the post for a paid consideration of $72.50 for a fireworks display and entertainment to be held July 3, 1945. The lease was subject to the agreement between the city and the partnership.

10. The post advertised its display and entertainment and invited plaintiff to attend and plaintiff purchased a ticket and attended. Upon presenting her ticket she was admitted and directed to a seat by ushers.

11. As soon as she was seated the post, the city and the partnership carelessly and negligently began the sale of beverages in large, heavy and dangerous glass bottles weighing from twelve to sixteen ounces, to approximately twelve thousand persons congregated in the stadium, and carelessly and negligently failed to provide the patrons with an adequate and safe means of disposing of the bottles and permitted the patrons to make such disposal thereof as their inclinations might prompt, and negligently and carelessly failed to have their salesmen and agents pour the beverages from the heavy glass bottles into paper cups or similar light containers which could not later fall with terrific force or be thrown by careless and heedless persons upon the head of plaintiff and other patrons of the defendants, thereby endangering the life and limb of plaintiff. The defendants not only failed to dispense the beverages in paper cups, but failed and neglected to immediately collect the heavy glass bottles after the beverages had been consumed by the patrons, and suffered the bottles to become vagrant among the patrons and to collect in large numbers upon the floor and aisles of the stadium, and upon the top ledge of the stadium, which ledge was about eighteen inches wide and forty inches high and adjacent to the exits from the stadium, and defendants negligently failed to foresee and anticipate that the bottles would be knocked from the ledge upon the head of plaintiff as she made an exit from the stadium and that they would be thrown by heedless and irresponsible patrons over the ledge and upon the head of the plaintiff as she made exit from the stadium.

12. After the entertainment on July 3, 1945, was concluded plaintiff started to leave the stadium and was proceeding through an

exit in the north part of the stadium when an empty beverage bottle was thrown by a patron of the defendants out of the stadium and over the ledge above where plaintiff was proceeding through the exit, or was knocked off of the ledge by patrons of the defendants passing along the ledge to leave the stadium; that the ledge was about forty feet above the head of plaintiff and the bottle struck the head of plaintiff with great force, causing her great injuries; that the defendants separately and in conjunction negligently failed to anticipate and expect the occurrence, and carelessly failed to provide plaintiff a safe exit from the stadium.

13. That the defendants had long had knowledge of the danger of permitting beverage bottles to become vagrant and unconfined in the stadium and at a previous time had established a rule prohibiting the sale of beverages in bottles and directed by the rule that the same should be sold only in paper cups which could not cause injury, but at some date prior to the accident in question they had negligently removed and abated the rule, and permitted the unlimited sale and dispersal of glass bottles, which might accumulate on the seats, aisles and ledge of the stadium, because of defendants' failure to provide a safe place for patrons to deposit the bottles, and that the defendants, in manner mentioned, created and maintained a dangerous public nuisance which ultimately resulted in injury and damage to the plaintiff.

14. In this paragraph is a repetition of allegations that the defendants had knowledge that sales of bottled beverages might be expected to produce injuries, and further that in previous years the post, with the city and partnership, had presented the same type of entertainment, and that they knew that other persons attending entertainments at the stadium had sustained injuries by being struck on the head by bottles in the same manner in which plaintiff sustained injury.

15. Plaintiff further charged the defendants had negligently permitted her to make an exit from the stadium through a passageway which was inadequately protected and equipped to prevent bottles from falling or being thrown in the manner alleged, and negligently failed to erect a barricade on top of the ledge of the stadium to prevent bottles from being thrown over the top of the stadium or from falling from the ledge, and made the exit dangerous.

16. The remaining paragraphs of the petition treat in detail of plaintiff's injuries and of the damages sustained by her.

Exhibit "A" attached to the petition is a very detailed statement of plaintiff's claim against the city, the partnership and the post, and does not have to be reviewed here.

After the petition had been filed defendants filed their motion that the petition be stricken for the reason it did not contain a statement of facts constituting a cause of action in ordinary and concise language and without repetition, and in the event that portion of the motion was not sustained that plaintiff be compelled to make her petition more definite and certain with respect to allegations in the eleventh and twelfth paragraphs, and further that she state how defendants were negligent in permitting plaintiff to make an exit from the stadium, and how they were negligent in failing to erect barricades to prevent bottles from being thrown over the top of the stadium or falling therefrom. Upon hearing, this motion was denied in all its parts.

Defendants then demurred on three grounds: (1) That several causes of action were improperly joined; (2) that the petition does not state facts sufficient to constitute a cause of action; and (3) there is such a confusion of theories, defendants will be unable to properly plead or defend. The trial court sustained the demurrer and plaintiff perfected her appeal.

The briefs cover a rather wide range and it is well that we clarify matters. In her brief the appellant expresses perplexity as to the ground of the demurrer on which the trial court rested its ruling, but we think it clear from the remarks of the trial court included in the record, that it concluded the petition did not state facts sufficient to constitute a cause of action. In its remarks the trial court made passing reference to another case, but which it did not name, and from those remarks appellant has drawn an inference the doctrine of *res ipsa loquitur* is involved, and she has presented some argument on that doctrine. From all briefs filed we learn the parties agree the case referred to by the trial court was *Sipe v. Helgerson*, 159 Kan. 290, 153 P. 2d 934, the defendant there being one of the parties in the instant case. In that case the plaintiff made no contention that his petition stated any cause of action except one for application of the doctrine of *res ipsa loquitur*, and it was held the doctrine should not be applied. We need not treat that phase here for the appellant states she does not believe the allegations of her amended petition present a case for application of the doctrine. We agree it does not. Appellant has pleaded specific facts which

she contends convict the defendants of negligence and the question is whether they are sufficient to constitute a cause of action.

It is clear from the petition that the plaintiff has suffered injury in person and that under our state constitution (Bill of Rights, § 18) she shall have remedy by due course of law. Whether, under the allegations of her petition, the defendants or any of them are responsible for those injuries and whether they or any of them must respond in damages, is the question presented by the demurrer. In discussing this question, we shall make no attempt to draw distinctions between any possible liability of the various defendants. Nor shall we discuss the general rule that as against a demurrer, the plaintiff is entitled not only to the benefit of the facts pleaded but to all reasonable inferences that may be derived therefrom, reserving for further consideration any exception there may be by reason of the overruling of defendants' motion to a part of plaintiff's petition.

There are scores of our own decisions and thousands in the reported cases dealing with the law of negligence and reference to any considerable number of them is an impossibility. In the general statements as set forth in textbooks and encyclopaedias may be found long and extended discussions of the various phases of the law of negligence, with exceptions to general rules and similar matters. In the following statement no attempt is made to survey the field, but only to direct attention to a few of the principles applicable to the situation disclosed by the present case, and which we think control our decision.

The ordinary definition of negligence is "lack of due diligence or care," and a legal definition is that it is "failure to exercise the care that the circumstances justly demand." (Webster's New International Dictionary, 2d ed.) It may be noted, however, that many decisions may be found stating that no comprehensive definition of actionable negligence may be stated, and that it is a broad term, and depends upon the particular circumstances of each case. (38 Am. Jur. 642, 45 C. J. 624 *et seq.*) It is clear, however, that no cause of action for negligence is stated unless it is alleged that there is a duty on the part of one to protect another against injury, a breach of that duty, and that the injury received is the proximate result of that breach. (*Jones v. Railway Co.*, 98 Kan. 133, 157 Pac. 399.) Negligence on the part of one in the use of his own property resulting in injury to another, may make the owner liable therefor, not-

withstanding the general purpose for which the property is used is lawful. (*McMullen v. Jennings,* 141 Kan. 420, 41 P. 2d 753.) A person who seeks redress does not make out a cause of action by showing only that he suffered injury, but if not willfully done he must show that the act, as to him, had possibilities of danger so apparent as to entitle him to be protected against the doing of it although the harm was unintended. The probability of injury by one to another is the basis for the creation of the duty to avoid injury, and every person is under a duty to exercise his senses and intelligence in his actions to avoid injury to another, and it is no excuse that the one who created the peril did not intend or expect an injury to result. In *Shafer v. Keeley Ice Cream Co.,* 65 Utah 46, 234 Pac. 300, 38 A. L. R. 1523, it was held that such an act as throwing candy from a float in a parade, though innocent in itself, may be negligent in respect to persons on the street, where the act is committed with knowledge it causes a commotion or jostling of persons on the street, with consequent injury, although it would not be actionable, if the result was not foreseen. And see, also, *Cory v. Ray,* 115 Ind. App. 50, 55 N. E. 2d 117; and *Sims v. Strand Theatre,* 150 Pa. Superior Ct. 627, 29 A. 2d 208. If the circumstances are such that a person of ordinary common sense who thought about it would recognize at once that if he did not use ordinary care in his own conduct with regard to those circumstances, his act would place another in danger, the duty to use ordinary care to avoid the danger arises. (*Aaron v. Telephone Co.,* 89 Kan. 186, 131 Pac. 582.) If there is some probability of harm sufficiently serious that ordinary men would take precautions to avoid it, then failure to take such care is negligence. It is not a necessary element of negligence that one charged with it should have been able to anticipate the precise injury sustained. (*Frazier v. Cities Service Oil Co.,* 159 Kan. 655, 157 P. 2d 822.)

The negligence charged must have been the proximate or legal cause of the injury. (*Kinderknecht v. Hensley,* 160 Kan. 637, 164 P. 2d 105.) And what is the proximate cause is ordinarily a question for the jury. (*Thummel v. State Highway Comm.,* 160 Kan. 532, 164 P. 2d 72.) In the multitude of decisions there are many definitions of the term "proximate cause" but one of the most widely quoted is that the proximate cause of an injury is that cause which in natural and continuous sequence, unbroken by any efficient intervening cause, produces the injury, and without which

the injury would not have occurred, The proximate cause is an essential element of liability for negligence. Negligence, no matter of what it may consist, cannot create a cause of action, unless it is the proximate cause of the injury of which the complaint is made. (*Barnhardt v. Glycerin Co.*, 113 Kan. 136, 213 Pac. 663, 31 A. L. R. 721; *Fraser v. Railway Co.*, 101 Kan. 122, 165 Pac. 831, L. R. A. 1917 F 749; *Stephenson v. Corder*, 71 Kan. 475, 80 Pac. 938, 69 L. R. A. 246, 114 Am. St. Rep. 500; *Cleghorn v. Thompson*, 62 Kan. 727, 64 Pac. 605, 54 L. R. A. 402.)

It has been said to be impossible to state an exact rule for determining when a cause is proximate and when it is remote. The Supreme Court of the United States, in *Insurance Co. v. Tweed*, 74 U. S. 44, 19 L. Ed. 65, said that each case must be decided largely on the special facts belonging to it, and often on the nicest distinctions. (*Jones v. Kansas Public Service Co.*, 158 Kan. 367, 370, 147 P. 2d 723.) Other courts have said that the inquiry as to natural and proximate cause and consequence is to be answered in accordance with common sense and common understanding. See the discussion in *A. T. & Santa Fe Rld. Co. v. Stanford*, 12 Kan. 354, 375, 15 Am. Rep. 362. A rule often stated is that the test of proximate cause is that which determines an injury to be the proximate result of negligence only where the injury is the natural and probable consequence of the wrongful act, an additional condition sometimes stated being that it must appear the injury was anticipated or that it reasonably should have been foreseen by the person sought to be charged with liability. (See *Schwarzschild v. Weeks*, 72 Kan. 190, 83 Pac. 406, 4 L. R. A. 515; *Stephenson v. Corder*, supra; *Cleghorn v. Thompson*, supra.) In *Light Co. v. Koepp*, 64 Kan. 735, 68 Pac. 608, it was said that the proximate cause of an injury is that which naturally leads to, and which might have been expected to be directly instrumental in, producing the result. Natural and probable consequences are those which human foresight can anticipate because they happen so frequently they may be expected to recur, while possible consequences are those which happen so infrequently that they are not expected to happen again.

The question of concurrent and intervening cause will be noted briefly. A particular cause may not be said to be concurrent unless without it the injury would not have occurred. It is a concurrent cause if it was a cause which was operative at the moment of injury and acted contemporaneously with another cause to produce

the injury and was an efficient cause in the sense that without it the injury would not have occurred. As bearing hereon see *Meecke v. Morguies,* 128 Kan. 423, 278 Pac. 45. Our decisions, as well as other authorities, recognize that two or more events may combine to produce a result and both be a proximate cause. See *Tilden v. Ash,* 145 Kan. 909, 67 P. 2d 614, *Acock v. Kansas City Power & Light Co.,* 135 Kan. 389, 10 P. 2d 877; *Pinson v. Young,* 100 Kan. 452, 164 Pac. 1102; *Street Rly. Co. v. Stone,* 54 Kan. 83, 37 Pac. 1012; Restatement, Torts, § 439 and comments *a* and *b.* And it has been held that where injury to an innocent person would not have occurred except for the concurrent negligence of others, the subject of proximate cause need not be considered, and those whose acts united in producing the injury will be jointly and severally liable to the injured party. See *Taggart v. Yellow Cab Co. of Wichita,* 156 Kan. 88, 131 P. 2d 924. See, also, *Gibson v. Bodley,* 156 Kan. 338, 133 P. 2d 112.

While it has been held that if two distinct causes are successive and unrelated in operation, they cannot be concurrent (*Railroad Co. v. Justice,* 80 Kan. 10, 101 Pac. 469; and *Thummel v. State Highway Comm.,* supra), the rule that the causal connection between an actor's negligence and an injury is broken by the intervention of a new, independent and efficient intervening cause, so that the actor is without liability, is subject to the qualification that if the intervening cause was foreseen or might reasonably have been foreseen by the first actor, his negligence may be considered the proximate cause, notwithstanding the intervening cause. (*Clark v. Powder Co.,* 94 Kan. 268, 146 Pac. 320, L. R. A. 1915 E 479, Ann. Cas. 1917 B 340; *Fraser v. Railway Co.,* supra.) It has also been held that one who negligently creates a dangerous condition cannot escape liability for the natural and probable consequences thereof, although the innocent act of a third person may have contributed to the final result. See *Crow v. Colson,* 123 Kan. 702, 256 Pac. 971, 53 A. L. R. 457, where it was said:

"Where defendant knows or has reasonable means of knowing that consequences not usually resulting from the act are likely to intervene so as to occasion damage, he is liable although it be not an ordinary and natural consequence of the negligence." (Citing cases.) (l. c. 704.)

Other Kansas cases having some bearing on the question presented are *Osage City v. Larkin,* 40 Kan. 206, 19 Pac. 658, 10 Am. St. Rep. 186, 2 L. R. A. 56; and *Kansas City v. Gilbert,* 65 Kan.

469, 70 Pac. 350. And also see *Lonatro v. Palace Theatre Co.*, 5 La. App. 386, principally relied on by appellant because of a somewhat similar state of facts, and where it was alleged by plaintiff that she purchased a seat in a theater conducted by the defendant and while the performance was underway she was struck by a bottle which fell from above; that a prudent management would have foreseen that as a result of selling pop and soft drinks in heavy glass bottles and could easily have guarded against such an accident by requiring the seller to empty the contents of the bottle into a paper cup. The court there held the allegations stated a cause of action, and that if the allegations were not true, it was a matter of defense and the burden was on the defendant to prove that pop in bottles was not sold by it or with its authority, or if so sold that no accident of the sort occurred or could reasonably have been anticipated.

It is not necessary that we repeat the facts as set out in the petition. We think it clear that plaintiff alleged a situation where each of the defendants knew that soft drinks in glass bottles were being sold to patrons in the stadium and the bottles delivered to the purchasers and that the bottles became vagrant in the stadium. While we think it is true that a glass bottle is not ordinarily a dangerous instrument, and that ordinarily the sale of a beverage in a glass bottle which is delivered to the purchaser does not in and of itself constitute negligence, the allegation that beverages were so sold cannot be isolated from other allegations and considered alone. In addition to the allegations of sale are other allegations about the physical features of the stadium; that bottled soft drinks had been sold in times past; that bottles so sold had become "vagrant" in the stadium; that at previous times other patrons had been injured by bottles either falling from or being cast over the walls of the stadium; that a regulation to prevent such sales had been made and later abated and removed; and that on the particular day when appellant was leaving the stadium she was struck by a beverage bottle which dropped from or was thrown over the stadium wall. Appellees sought by motion to have the latter allegation made more definite and certain by stating whether the bottle was knocked from the wall or thrown over it and this motion was denied. We think the ruling was proper. Under the allegations, the situation giving rise to similar accidents in the past is set forth as is the fact that appellees had notice thereof. Under the decisions reviewed, the appellees owed the patrons in the stadium the duty to exercise care

that there be no repetition. Whether the bottle was inadvertently pushed from the wall or was cast over it was not an intervening and superseding cause under the facts as alleged in the petition nor was it the sole, proximate cause of the injury. The negligence of the appellees in permitting the sale and delivery of the bottles and allowing them to become vagrant in the stadium furnished the first step and the fall of the bottle, whether pushed or thrown, was the second step, not only reasonably to be anticipated but known to the defendants to have occurred previously according to the allegations of the petition. In our opinion the petition stated a cause of action.

In what has been said we have made no reference to certain matters specifically pointed out in the briefs of appellees. The city and the partnership filed one brief and devote some space to the proposition that it is impossible to determine from the petition on just what theory appellant relies, a matter later mentioned, and also to the doctrine of res ipsa loquitur, of which we have already disposed. The gist of their argument otherwise is that the sale of beverages in bottles is not inherently dangerous and that if appellant was injured, her injuries were occasioned by the act of some third person, and their negligence, if any, was not the proximate cause of her injuries. This latter phase has been sufficiently discussed heretofore. The Post, in its brief, also makes some reference to confusion of theories in appellant's petition and to the doctrine of res ipsa loquitur, and that, under the allegations of the petition, it has no liability, even though the other defendant appellees are properly charged with negligence.

We shall not devote much space to the proposition of the appellees that the petition presents a confusion of theories. In our opinion the petition, although somewhat verbose and repetitious, presents only one theory and that is one that charges all of the defendants with permitting beverages to be sold in glass bottles to patrons in the stadium, the bottles allowed to become vagrant; that defendants knew, by reason of past occurrences that the bottles might fall from or be cast over the stadium walls and patrons injured; that such sales were made, a bottle fell or was thrown and plaintiff was injured. After setting out her injuries she asked for damages. Only one theory was presented.

Although appellant in her brief presents some argument on the question of immunity of a municipality from liability for tort, we shall not discuss that phase. In her petition she sets out only a part

of the facts as to how the stadium is conducted, and she states further she does not have a copy of the contract between the city and the partnership. The question is not discussed in the briefs of the appellees. We are of the opinion that this question should be decided only as the result of an issue joined and after briefs have been filed which treat the question adequately.

At this time we shall not discuss the question whether one defendant may be liable and another not, for under the allegations of the petition dealing with negligence, each is jointly charged with the others. Upon issues joined a different situation may be presented, but we shall not anticipate it.

The judgment of the trial court is reversed and the cause remanded with instructions to overrule the demurrer.

BURCH, J., not participating.

WEDELL, J. (concurring in part and dissenting in part): Limitation of time precludes a detailed analysis of the amended petition. Although the question is not free from difficulty I concur in the view of the majority that the demurrer to the amended petition should be overruled insofar as the city of Wichita and the partnership is concerned. I do, however, desire to state that a careful examination of the entire amended petition leads me to conclude that, notwithstanding some apparent inconsistent statements therein, it does not state a cause of action against the defendant, The Thomas Hopkins Post No. 4 of The American Legion. On the contrary, in view of specific affirmative allegations therein contained, it appears to me the amended petition tends to, if it does not actually, relieve that defendant of liability.