TEXAS METAL FABRICATING COM-
PANY, Inc., Appellant,

v.

NORTHERN GAS PRODUCTS CORPO-
RATION, The Fidelity and Casualty
Company of New York, and Robert L.
Hendrickson, Appellees.

FLUOR CORPORATION, Ltd., Appellant,

v.

NORTHERN GAS PRODUCTS CORPO-
RATION, The Fidelity and Casualty
Company of New York, and Robert L.
Hendrickson, Appellees.

Nos. 9673, 9674.

United States Court of Appeals
Tenth Circuit.

Aug. 26, 1968.

Floyd E. Jensen, Wichita, Kan. (Lewin E. Timmerman, of Bell & Timmerman, Wichita, Kan., and Clifford L. Malone, of Adams, Jones, Robinson & Manka, Wichita, Kan., with him on the brief), for appellants.

Harry E. Robbins, Jr., of Gamelson, Hiebsch, Robbins & Tinker, Wichita, Kan., and Arthur C. Hodgson, Lyons, Kan., for appellees.

Before HILL, SETH and HICKEY, Circuit Judges.

SETH, Circuit Judge.

This is a diversity action which was commenced by the individual appellee to recover for personal injuries which he suffered during an explosion which occurred in a hydrocarbon extraction plant in Kansas. The corporate appellees are his employer, Northern Gas Products Corporation, and the employer's compensation carrier, The Fidelity and Casualty Company of New York. The appellees in the trial court recovered judgment against both of the appellants who have now taken this appeal.

The record shows that appellant, Texas Metal Fabricating Company, Inc., built a piece of equipment known as a heat exchanger, which is a metal, cylindrically shaped, enclosed vessel approximately thirty-five feet in length and two feet in diameter. It is designed to provide for a flow of liquids through a large number of small tubes inserted lengthwise through the vessel and also for the circulation of liquids within the outside metal shell which encloses the tubes. In this case propane was circulated through the small inserted tubes and water was circulated and passed between baffles in the area inside the cylinder and surrounding the tubes. The baffles are made of sheet metal which extend across a portion of the interior of the cylinder and through which holes are drilled for the tubes which are inserted through them and which extend throughout the length of the cylinder.

The record shows that the heat exchanger was ordered by the appellant, Fluor Corporation, Ltd., which was engaged in the business of constructing plants for the extraction of liquid hydrocarbons from gases, and in this instance had a contract for the construction of such a plant for Northern Gas Products Corporation. The heat exchanger was constructed in accordance with standard procedures and delivered to Fluor at the rail loading area at Texas Metal's plant in Houston, Texas. The heat exchanger was incorporated in the plant under construction and initially was placed in limited service and eventually in full service. As will hereinafter be further described, the employees of the contractor Fluor when the plant went into operation noticed a rattle in the heat exchanger which they described as a "tube rattle." The engineers of Fluor and the plant owner discussed the problem, agreed on a method which would stop the rattle. The next time the plant was shut down bolts were inserted through the outer casing of the heat exchanger and tightened against the baffles in an attempt to stop what was considered to be a movement of the tubes in the interior. Shortly thereafter the record shows that propane gas escaped from a hole worn in one of the small tubes inside the heat exchanger and became mixed with the water flowing through the outside casing. The gas passed

through a portion of the plant to an area where the individual appellee was working, was ignited, and caused the explosion in which he was injured.

■ The appellants in this appeal urge that the trial court was in error in its failure to grant a motion by Texas Metal Fabricating Company, Inc., a foreign corporation, to quash the service of process which had been made upon it by service on the Kansas Secretary of State, and by service by the United States Marshal in the State of Texas. In view of the disposition which we make of other contentions made by this appellant, it is not necessary to develop the issues relating to the service question. It is sufficient to state that under the facts shown here, there was sufficient contact and involvement by the foreign corporation within the State of Kansas to support the service.

Appellant, Texas Metal Fabricating Company, Inc., also urges that the trial court was in error in failing to sustain its motion to dismiss at the conclusion of plaintiff's evidence and in failing to sustain its motion for directed verdict. The ground asserted by this appellant is that the heat exchanger which it designed and manufactured had been modified without its knowledge or consent after it had been put into operation, and that such change was the proximate cause of the plaintiff's injuries. This appellant thus asserts that it was thereby relieved of liability.

The record shows that the heat exchanger was tested by this appellant when it completed its fabrication of the unit, that it was installed by the contractor Fluor, which is also an appellant herein, and was then tested. The plant in which the exchanger was installed was completed some time in 1961, and this unit was in the system when it was started on a limited basis in that year. The record shows that there was a flow of water through the unit from at least August 1962. The record shows that the plant did not go into complete operation until some time in January 1963.

A witness who was a process engineer and employed by Northern Gas Products, for whom the plant was being constructed, testified that a noise in the heat exchanger was called to his attention in June 1963. This was described as a "rattle in the tubes." The witness went to the unit and listened to the noise and put what he described as a monitor on the exchanger. This monitor was a device which would indicate whether or not there had been any leaking of propane gas into the water flowing through the heat exchanger. There was no leakage indicated by the monitor. Thereafter there began a series of discussions between the contractor Fluor and the representatives of the owner concerning the rattle in the heat exchanger and what should be done about it. Finally a mutual decision was reached that the rattle should be stopped by drilling through the outer casing of the heat exchanger and inserting a bolt which would press against metal baffles in the interior of the exchanger. These baffles had been built into the exchanger for the purpose of diverting the flow of water and apparently also for the purpose of separating the many tubes which were inserted lengthwise through the unit. The baffles were so "pinned" at a time when the plant was out of service. The record shows that this method of stopping the rattle had been used in other plants and on other heat exchangers manufactured by Texas Metal. The plant went back into production on October 7, 1963, and the explosion which is the subject of this litigation occurred on October 17, 1963. The record shows that Texas Metal was not advised or consulted in any way about the rattle in the tubes or about pinning the baffles. The witness for the appellant Texas Metal testified that they heard nothing nor knew nothing about this particular heat exchanger from the time it left the plant until they were sued.

■ The record shows that the propane gas which caused the explosion escaped through a hole in one of the

tubes which ran lengthwise through the heat exchanger. The hole had been worn in the tube at the place of contact of this tube with one of the baffles. The witnesses who testified as to the reason a hole had been worn in the tube attributed the cause to the pinning of the baffles. Other witnesses testified that in their opinion the tube rattle, which was described as being excessive, was caused by the movement of the tubes against the baffles and could have resulted in the wearing of the tubes over a period of time.

The plaintiff asserts that the unit rattled and thus was defective, and that the action taken to modify the unit can be characterized as no more than some concurrent act by the contractor Fluor; consequently he urges that both appellants are responsible, but we cannot agree.

Appellant Texas Metal points out that there are no Kansas cases on the question of the modification of a product following its sale to the user and the result of such modification on the seller's liability. The appellant cites our case of Marker v. Universal Oil Products Co., 250 F.2d 603 (10th Cir.), and Young v. Aeroil Products Co., 248 F.2d 185 (9th Cir.), as holding that the manufacturer may be released from liability in the event of an improper use of the machinery or by reason of a substantial modification of the machinery.

The Marker case concerned a refinery tank which had been constructed for the use of a cold catalyst. The user had commenced using a hot catalyst instead, and an employee was asphyxiated by fumes generated in the unit. This cited case thus involved a use of a unit which was not contemplated by the maker, and also what sort of warning would be required under such circumstances. Our court held that the manufacturer was not liable.

In the Ninth Circuit case of Young v. Aeroil Products Co., supra, an employee was injured by a portable elevator which was used in construction work and which collapsed while it was being prepared to be moved from the jobsite. The evidence indicated that the machinery had been damaged and repaired several times and further had been modified to lower in some way the point at which it was towed and thereby to change its center of gravity. The Ninth Circuit held that these were substantial changes in the unit and were the direct cause of the injuries. The appellant also cites Brown v. General Motors Corp., 355 F.2d 814, a Fourth Circuit case which however relates to the installation of safety devices rather than the issue before us.

Appellees here urge that a dangerous gas was used in the heat exchanger and a high degree of care was required. Appellees also argue that in the event there are two concurrent causes of the damage, both parties are liable under Kansas law, citing Rowell v. City of Wichita, 162 Kan. 294, 176 P.2d 590. Appellees also call attention to our case of B. F. Goodrich Co. v. Hammond, 269 F.2d 501 (10th Cir.), for the proposition that evidence must be construed in the light most favorable to the plaintiff. The case cited however basically was on the question of whether or not a passenger in a car, who was not in privity of contract with the tire supplier, had a cause of action, and is not particularly helpful on the issues here.

There is very little other authority on the matter of modification or changes in products sold. The courts do not seem to adopt the same legal theory. Some place it under ordinary rules of contributory negligence; others relate it more to the matter of causation of the injuries, while others treat it as a question of whether or not the identity of the product has been preserved. One of the significant cases is Webb. v. Olin Mathieson Chemical Corp., 9 Utah 2d 275, 342 P.2d 1094, 80 A.L.R.2d 476, decided by the Utah Supreme Court. This case concerned a rifle which had been modified in several respects by the purchaser. One or two expert witnesses for the defendant testified categorically that the

modification caused the injury, while the plaintiff, who was a gun expert, testified to the contrary. The court treated the matter as one of contributory negligence and held that in view of the evidence, the trial court could not as a matter of law hold the plaintiff guilty of contributory negligence.

In the case of Mazzi v. Greenlee Tool Co., 320 F.2d 821 (2d Cir.), the question was whether or not the modification of a portion of a pipe bending machine relieved the maker of liability. The testimony was in conflict as to whether defects in the casting used in the machine had caused it to be weak and defective, or whether the modification had caused it to fail. The court there states the question to be whether or not the article was so altered by the plaintiff "that it became no longer the article which defendant turned out, but something else." The court continued by saying, "this holding assumes that the substantive law of New York establishes that a manufacturer cannot be held liable under MacPherson if his product was substantially or structurally changed after sale. Presumably, what constitutes a structural change would be a question of law for the court to decide." The court continues to treat the issue as one of ordinary tort law and discusses the matter of concurrent and intervening negligence. The court held that "* * * the essence of any doctrine of 'substantial alteration,' and if the evidence was such that the jury could reasonably have found that the alterations in question were not a superseding cause of the injury, it was error to direct a verdict on that ground." The court thus treats the issue as a combined causation and ordinary negligence problem and concludes that the evidence was conflicting and it was sufficient to permit the case to go to the jury.

The author in 52 Minn.L.Rev. 627, "Buyer's Conduct as Affecting the Extent of Manufacturer's Liability in Warranty," discusses the several ways in which the action of the user is treated in implied warranty cases and points out that some courts do not permit any showing relative to contributory negligence while others would permit such a showing either as contributory negligence or as a misuse of the product.

In the case at bar, of course, we do not have a fact situation which relates to contributory negligence concepts, but we do have real issue of causation. The case is unusual and perhaps more difficult by reason of the fact that the alteration was made in order to correct something which might later have caused the same type of accident. The "pinning" of the tubes was undertaken in order to stop the rattle of the tubes which the experts testified could have caused a wearing over an extended period of use. The alteration was done without consultation with or knowledge of Texas Metal. In view of the reason why the alteration was undertaken and in view of the relatively minor nature of the change, it cannot be said to be either a "structural" change or a "substantial" change. It was an alteration however which apparently at least accelerated the tube wearing and can be said to have caused this particular explosion to occur when it did. It was thus an intervention by the contractor Fluor by the insertion of the bolts into the theretofore sealed unit which caused this accident.

As indicated above, the record shows with little or no question that the alteration by Fluor caused *this* puncture in the tube and thus this accident. This resulted either from the manner in which it was done or it was the wrong solution for the rattle. This intervening act by Fluor and the owner was clearly shown to be the cause of this accident and Texas Metal cannot be held liable.

Texas Metal in its motion for judgment n. o. v. stated that the plaintiff had "* * * failed to prove a prima facie case under the doctrine of implied warranty for the reason that prior to the accident defendants' product had been materially altered, which alteration proximately caused the hole to develop

* * *." The trial court in ruling on the motion for new trial did not rule on the alteration point specifically, and said that there was evidence from which the jury could conclude that the unit was defective when made because of the rattle which would produce excessive wear and likely cause leaks to "prematurely develop." The court in its ruling further said that the "pinning" caused the cutting of a tube. The court said there was an implied warranty by both appellants. The trial court in its memorandum on the motions for new trial mentions the portion of Texas Metal's motion at the end of plaintiff's case which raised the alteration issue. The court's ruling was in error.

■ The appellant Fluor also urges that the trial court erred in failing to grant its motion to dismiss at the end of the plaintiff's evidence and its motion for directed verdict. The motions were on two grounds; first, that no defect was shown by the evidence to have existed in the heat exchanger when installed, and secondly, there was no implied warranty as to the modification which Fluor undertook. The appellant argues that Fluor in the pinning of the baffles in the unit was acting as a "repairman" under a contract separate from the one for design and construction of the entire plant.

Fluor had built the plant under a cost plus agreement, and it had also entered into a separate contract with the owner whereby miscellaneous engineering, procurement, and construction services would be performed. At the time of the accident Fluor had not turned over the control of the plant to the owner, although it was operating to some extent, but was doing additional work to make it operate more efficiently. Thus Fluor was acting under the design-construction contract as to the whole plant to make it work properly, and apparently also under the supplemental contract for this particular work on the heat exchanger, at least to fix its compensation.

The appellees urge that Fluor expressly warranted to the owner that the work on the plant would be free of defects and so impliedly warranted to appellee Hendrickson who was injured. The evidence established that the pinning of the baffles in the unit caused the explosion.

The record shows that at the time of the action Fluor's relationship to the owner was not that of a "repairman" in the ordinary sense as appellant urges. It was still the designer-constructor of the plant who had not completed the work necessary to deliver the plant in effective working condition. The plant was not so delivered to the owner until several months after the accident. This was the underlying relationship and should govern the consequences of the acts of Fluor. This is the position which the trial judge apparently took, and we agree. This relationship was not altered by the supplemental contract mentioned above.

■ Under these conditions and under the law of Kansas, the warranty implied in its installation of the heat exchanger and its modification to eliminate the tube rattle extended to the individual appellee and the trial court correctly applied the Kansas decisions. The Kansas courts have not had an opportunity to consider in other cases all the aspects of the issue here, but we are of the opinion that the Kansas courts would reach the same result as did the trial court.

Fluor on this issue of warranty urges that the case of Vrooman v. Beech Aircraft Corp., 183 F.2d 479 (10th Cir.), arising in Kansas and decided by this court, is applicable. This concerned the repair of an airplane by the manufacturer with the action based upon the faulty repair. The issue was argued, but despite the wording of the complaint the case was tried and briefed on appeal and decided as an ordinary tort action.

The cases cited by appellant, Perlmutter v. Beth David Hospital, 308 N.Y. 100, 123 N.E.2d 792, and Pepsi Cola

Bottling Co. of Anchorage v. Superior Burner Service Co., Alaska, 427 P.2d 833, are not persuasive in view of the Kansas authorities.

The Kansas courts appear to have adopted a doctrine relating to repairmen and implied warranty which is somewhat different from the usual rule. For example, in In Re Talbott's Estate, 184 Kan. 501, 337 P.2d 986, the court directly held that there was an implied warranty that the work would be done in a workmanlike manner with appropriate care and skill when work or service is undertaken. This cited case was an action based upon improper installation of plumbing fixtures. The cause of action there alleged was for breach of implied warranty. The Kansas court also said negligent acts alleged may be considered as asserting breaches of implied warranty and that often the plaintiff has an election to bring the action in tort or on warranty. See also McCoy v. Wesley Hospital, 188 Kan. 325, 362 P.2d 841 (Kan.). This is what the plaintiffs in the case at bar asserted in their complaint. The defendants during the proceedings urged the election, and the trial court presented the issues to the jury in accordance with the Kansas authorities. The privity issue has been decided in B. F. Goodrich Co. v. Hammond, 269 F.2d 501 (10th Cir.).

The evidence, construed most favorably to appellees, establishes under the Kansas doctrine a breach of implied warranty and the trial court was correct in its denial of appellant Fluor's motions.

The appellant presents several other issues including the matter of contributory negligence as a defense and the asserted misconduct of a juror in answering voir dire questions. We have examined these issues and find no merit in them.

The case is reversed as to the appellant, Texas Metal Fabricating Company, Inc., as above indicated and remanded, but affirmed in all other respects.