Mary McDERMOTT, Plaintiff–Appellant,

v.

MIDLAND MANAGEMENT, INC., Defendant–Appellee.

No. 91–3299.

United States Court of Appeals, Tenth Circuit.

June 28, 1993.

Ronald D. Heck of Heck & Sheppeard, P.A., Topeka, KS, for plaintiff-appellant.

John A. Bausch of Benfer & Bausch, P.A., Topeka, KS, for defendant-appellee.

Before LOGAN, TACHA, and EBEL, Circuit Judges.

EBEL, Circuit Judge.

This case comes before us on appeal of a district court order granting summary judgment to the defendant. The plaintiff in this case was injured when an employee of the defendant, the manager of the plaintiff's apartment building, let a stranger into her apartment. The district court determined as a matter of law that the actions of the defendant were not a foreseeable cause of the plaintiff's injuries. Because we determine that the issue of foreseeability in this case should not have been resolved on summary judgment, we reverse and remand for further proceedings.

FACTS

The plaintiff, Mary McDermott, worked as an officer at the Topeka Pre-Release Center, a minimum security criminal facility. She lived alone at the Brookfield Village Apartments in Topeka, Kansas. Tom Dixon, an employee of the defendant Midland Management, was the manager of the apartments. He knew of McDermott's employment and had been asked not to give her address or phone number to anyone.

Michael Carpenter was a former inmate of the Topeka Pre-Release Center, where he had met McDermott. On the morning of October 30, 1988, Carpenter approached Dixon at the Brookfield Village Apartments and explained that McDermott had left him in Kansas City. Carpenter, who by appearance, speech, and dress was non-threatening, explained that he had been allowed to store some personal belongings in McDermott's apartment and that he wanted to retrieve them. He claimed that he had knocked on McDermott's door and that there was no answer. Dixon had never seen Carpenter before and he did not request to see any identification.

Dixon attempted to reach McDermott by telephone but was notified by a recording that her service had been disconnected. McDermott was two months behind in her rent and Dixon could not recall having seen her in several days. Concerned for her well-being, Dixon went to McDermott's apartment. He was accompanied by Carpenter. Without notice or consent, Dixon opened McDermott's door with his pass key and entered. McDermott was home and in fact had heard Carpenter knocking earlier. She had been able to identify Carpenter from a side window and chose not to answer her door. McDermott confronted Dixon and Carpenter and asked both of them to leave. Dixon told McDermott that Carpenter wished to see her. Arguments ensued between the parties. At some point, Carpenter stepped into the apartment, moved around Dixon, and struck McDermott in the face. She has undergone several operations for her injuries and still suffers from a loss of vision and facial deformity.

McDermott brought this negligence action against Midland Management, Inc. She claims that Midland's agent, Dixon, was negligent in opening her apartment door without notice or consent and that this was the proximate cause of her injuries. The district court held on summary judgment that Carpenter's intentional tortious conduct was the "direct, separate wholly independent and efficient intervening cause of [the] plaintiff's injuries." Memorandum and Order, No. 90–1014–C at 13. McDermott now appeals. For the reasons stated below, we reverse and remand for trial.

## DISCUSSION

### I. Standard of Review

■ "We review the grant or denial of summary judgment de novo. We apply the same legal standard used by the district court under Fed.R.Civ.P. 56(c)...." *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir.1990) (citations omitted). "Summary judgment is appropriate when there is no genuine dispute over a material fact and the moving party is entitled to judgment as a matter of law." *Russillo v. Scarborough*, 935 F.2d 1167, 1170 (10th Cir.1991); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). The record is viewed in the light most favorable to the party opposing summary judgment. *Deepwater Invs., Ltd. v. Jackson Hole Ski Corp.*, 938 F.2d 1105, 1110 (10th Cir.1991).

### II. Legal Analysis

■ Negligence is defined under Kansas law as the lack of due care or lack of that care which a reasonable person would exercise given a particular set of circumstances.[1] *Rowell v. City of Wichita*, 162 Kan. 294, 176 P.2d 590, 595 (1947). In order to recover under a negligence theory, the plaintiff must show duty, breach, proximate cause, and injury.[2] *Id.* (citing *Jones v. Atchison, T. & S.F. Ry. Co.*, 98 Kan. 133, 157 P. 399 (1916)). Proximate cause is "that cause which in natural and continuous sequence, unbroken by any efficient intervening cause produces the injury and without which the injury would not have occurred." *Id.*, 176 P.2d at 595–96; *see also Gard v. Sherwood Constr. Co.*, 194 Kan. 541, 400 P.2d 995, 1000 (1965).

■ Generally, there is no proximate cause where the chain of events is broken by the intervention of a "new, separate, wholly independent, and efficient intervening cause." *Finkbiner v. Clay County*, 238 Kan. 856, 714 P.2d 1380, 1384 (1986); *accord Gard*, 400 P.2d at 1000. However, liability will still attach despite the existence of an intervening cause where the intervening cause was foreseen or might reasonably have been foreseen. *Citizens State Bank v. Martin*, 227 Kan. 580, 609 P.2d 670, 677 (1980); *Cooper v. Eberly*, 211 Kan. 657, 508 P.2d 943, 949 (1973); *George v. Breising*, 206 Kan. 221, 477 P.2d 983, 988 (1970); *Gard*, 400 P.2d at 1000; *Steele v. Rapp*, 183 Kan. 371, 327 P.2d 1053, 1055, 1059, 1062 (1958); *Rowell*, 176 P.2d at 596.

In the instant case, the district court found as a matter of law that Carpenter's tortious act broke the chain of causation between

---

1. This action was based on diversity jurisdiction, and consequently we apply Kansas law.

2. McDermott argues that the court declined to consider her claims that the defendant breached both the Kansas Residential Landlord and Tenant Act, K.S.A. 58–2557, and the implied warranty of habitability. However, the court did address these claims in its opinion, finding them to be alternate grounds on which to conclude that the defendant owed McDermott a duty. The court stated:

   from reading the plaintiff's contentions in the pretrial order and her arguments in the brief, the court understands that the plaintiff refers to the implied warranty of habitability and the KLTA only as possible sources for the legal

   duties to her negligence claim. The court does not construe any of plaintiff's pleadings as alleging a separate contract action under either an implied warranty theory or the KLTA. District Court Opinion at 6. We agree with this interpretation by the district court. *See* Complaint, Appellant's Appendix at Sec. 1; Response to Defendant's Motion for Summary Judgment, Appellant's Appendix at Sec. 5.

   The district court found that the defendant owed McDermott a duty of care. However, for purposes of our review of the summary judgment order, the basis of the duty was irrelevant because the court relied on its finding that the breach was not the proximate cause of McDermott's injuries. On remand, the court will have to reconsider all the possible origins of the defendant's duty.

Dixon's opening of the door and the plaintiff's injuries. The court concluded therefore that Dixon's acts were not the proximate cause of the injuries to the plaintiff, and granted summary judgment in favor of the defendant. The question presented to us is whether the district court properly made these determinations on summary judgment.

Kansas has been very emphatic that, except in cases where only one inference can be drawn from the facts, negligence, proximate cause, and foreseeability are questions of fact for the jury. *See St. Clair v. Denny,* 245 Kan. 414, 781 P.2d 1043, 1047 (1989); *Baker v. City of Garden City,* 240 Kan. 554, 731 P.2d 278, 281 (1987); *Gard,* 400 P.2d at 1000, 1002; *Rowell,* 176 P.2d at 595.

As might be expected in an area of the law in which so much depends on the factual scenario of the particular case, the holdings of the Kansas cases that address causation are not clearly dispositive of the issue. However, we find that those cases whose facts most closely approximate those of the instant case support the conclusion that the district court improperly granted summary judgment. *See Steele,* 327 P.2d at 1065 (holding that demurrer improperly granted because dropping bottle of flammable liquid was reasonably probable such that it was not an intervening cause in action against bottle manufacturer); *Rowell,* 176 P.2d at 597 (holding that demurrer on grounds of intervening act was inappropriate where stadium owner reasonably should have anticipated that glass bottles distributed at sporting event would be pushed or thrown and injure patrons); *see also Cooper,* 508 P.2d at 950–51 (upholding judgment for the plaintiff who was injured in collision with horse on road, finding that trespasser's opening of gate was not intervening cause in light of defendant's failure to lock gate and defendant's knowledge that horses had previously escaped and that trespassers often entered property); *Breising,* 477 P.2d at 987 (implying that car repair shop may have been liable to owner of vehicle that was left with keys in ignition and was subsequently stolen, but upholding summary judgment against individual who was injured in an accident with thief).

The Kansas courts have approved summary judgment in other cases which we find distinguishable from the instant case. *See Sly v. Board of Education,* 213 Kan. 415, 516 P.2d 895, 903–04 (1973) (holding that summary judgment in favor of the defendant was proper where student's injuries were the result of an unforeseeable attack by other students before school); *Hickert v. Wright,* 182 Kan. 100, 319 P.2d 152, 160–61 (1957) (upholding demurrer in wrongful death action growing out of an auto accident against mechanics who installed tube in tubeless tire one month before accident, where court found reckless driving to be an intervening cause); *Stevenson v. Kansas City,* 187 Kan. 705, 360 P.2d 1, 6 (1961) (finding demurrers appropriate against landlord and tenants of auditorium because it was unforeseeable that plaintiff would be assaulted on her way to the restroom during the sporting event). In those cases the injuries were caused by independent, unrelated events, the defendants had not directly created the opportunity for the intervening acts, the actions often asserted the defendants' failure to act rather than an affirmative action by the defendant, and there was often a sizeable time delay between the defendants' acts and the resulting injuries.

We conclude that, on the record before us in this case, there are sufficient facts such that a reasonable juror, viewing the evidence in the light most favorable to the plaintiff, could have found that Carpenter's attack was foreseeable and that Dixon's actions were therefore the proximate cause of the plaintiff's injuries.

Dixon, the apartment manager, was aware that the plaintiff was single, lived alone, and worked at the Topeka Pre-Release Center where she was in daily contact with criminals. In fact, the plaintiff had specifically asked Dixon not to release her place of residence and phone number. Because Dixon was the apartment manager, he should also have realized that the plaintiff could identify individuals knocking at her door and may have chosen not to answer because she either did not wish any visitors or did not want to see a particular visitor.

With this background of knowledge, Dixon was approached by Carpenter in the morning of October 30, 1988. Although Dixon had never seen Carpenter before, there is no indication on the record that Dixon asked Carpenter for any type of identification or made any attempt to verify his identity. Carpenter claimed that the plaintiff left him in another city and that he wished to retrieve some belongings that he had left with the plaintiff. Carpenter informed Dixon that he knocked on the door to the plaintiff's apartment but no one answered.

Given the circumstances described above—the plaintiff's living situation, her request for anonymity, the nature of her employment, Carpenter's story of having been left by the plaintiff in another town, the possibility that the plaintiff deliberately was not opening the door to Carpenter, and the fact that Carpenter was physically younger and bigger than Dixon and thus potentially not restrainable by Dixon once the door was opened—we find that a reasonable juror could have found that Carpenter's attack on the plaintiff was a foreseeable result of Dixon's actions.[3] Accordingly, we find that the district court's grant of summary judgment was erroneous.

This conclusion is buttressed by Sections 448 and 449 of the Restatement Second of Torts, both of which have been adopted by the Kansas courts.[4] *Citizens State Bank,* 609 P.2d at 676, 678. Section 448 of the Restatement provides:

> The act of a third person in committing an intentional tort or crime is a superseding cause of harm to another resulting therefrom, although the actor's negligent conduct created a situation which afforded an opportunity to the third person to commit such a tort or crime, unless the actor at the time of his negligent conduct realized or should have realized the likelihood that such a situation might be created, and that a third person might avail himself of the opportunity to commit such a tort or crime.[5]

The ultimate question under this section is whether the intervening tort or crime was foreseeable. In light of our conclusion that there was sufficient evidence on the record to find that Carpenter's attack on the plaintiff was a foreseeable result of Dixon's actions, this was properly a question for the jury.

Section 449 of the Restatement Second of Torts provides:

> If the likelihood that a person may act in a particular manner is the hazard or one of the hazards which makes the actor negligent, such an act whether innocent, intentionally tortious, or criminal does not prevent the actor from being liable for harm caused thereby.[6]

---

**3.** There are also some reasons to believe that Dixon might not have foreseen Carpenter's actions such as Carpenter's non-threatening appearance and speech and Carpenter's claim that he had been allowed to leave personal belongings in the plaintiff's apartment which implied a friendship with the plaintiff. However, upon summary judgment, we must view the evidence in the light most favorable to the plaintiff.

**4.** On appeal, the parties spend some time arguing over whether Restatement Section 448 or 449 more appropriately applies to the factual situation in the present case. The defendant would have us apply Section 448, while the plaintiff asserts the applicability of Section 449. We find that regardless of the Restatement provision applied, the district court's grant of summary judgment was erroneous.

**5.** The Kansas Supreme Court adopted essentially the same standard in *Sly,* 516 P.2d at 903, when it approved the language set forth in 57 Am Jur.2d, Negligence, § 206. "Where the courts consider the question of proximate cause as determinative of liability in such cases, the general rule is that when, between an original negligent act or omission and the occurrence of an injury, there intervenes a wilful, malicious, and criminal act of a third person which causes the injury but was not intended by the person who was negligent, *and could not have been foreseen by him,* the causal chain between the negligence and the accident is broken." 57 Am Jur.2d, Negligence, § 206 at 580–81.

**6.** The appellee asserts that Section 449 of the Restatement is not applicable to the instant case because the defendant did not *know* of the likelihood of Carpenter's misconduct. We find this reasoning to be erroneous. The appellee ignores the comments themselves which establish that it is enough that the defendant *should have realized* the likelihood of the misconduct. The most analogous statement in the commentary notes that "there are many precautions, such as locking a door ... which are designed to protect the chattels contained in the building or room from theft. The fact that the thief's act in taking advantage of the opportunity [made possible by the defendant's leaving the door open] is criminal does not

We are advised to read Section 449 in conjunction with Restatement Second of Torts Section 302B, which reads:

An act or omission may be negligent if the actor realizes or should realize that it involves an unreasonable risk of harm to another through the conduct of the other or a third person which is intended to cause harm, even though such conduct is criminal.[7]

The comments to Section 302B bear directly on this case:

There are, however, situations in which the actor, as a reasonable man, is required to anticipate and guard against the intentional, or even criminal, misconduct of others. In general, these situations arise where the actor is under a special responsibility toward the one who suffers the harm, which includes the duty to protect him against such intentional misconduct; or where the actor's own affirmative act has created or exposed the other to a recognizable high degree of risk of harm through such misconduct, which a reasonable man would take into account. [For example]

. . .

. . . . .

Where the actor's own affirmative act is intended or likely to defeat a protection which the other has placed around his person or property for the purpose of guarding them from intentional interference.

Comment e.

■ The law has traditionally recognized the privacy of an individual in their home. Simply because apartments, which have become commonplace in modern living, are grouped together in a common building does not lessen the privacy interest that attaches to a person's home. Locks are placed on doors to ensure privacy. They insure that unwanted visitors and solicitors can be ex-

cluded when the occupant wishes to be alone. They are significant in guaranteeing personal safety and the security of possessions. It is with the understanding that they will receive shelter and protection that people rent apartments, and in renting apartments, landlords undertake not to interfere with these expectations except in authorized ways. *See Kendall v. Gore Properties*, 236 F.2d 673, 678 (D.C.Cir.1956) ("[The plaintiff] had a lease pursuant to which she paid for shelter and protection. She had one set of keys for herself; another set was retained by the landlord. She was entitled to assume that appellees would introduce no intruder into her apartment. She had a right to expect that the landlord would not give up his set of keys to a stranger....").

Group living requires that a number of compromises be made regarding the absolute privacy of the home. For example, in order to provide for the safety of others and maintenance of the facilities apartment managers often have master keys in order to access apartments. However, this does not lessen the privacy interest held by the tenant.

In fact, the Kansas legislature has placed express limitations upon a landlord's right to enter a dwelling. K.S.A. 58–2557 establishes that:

(a) The landlord shall have the right to enter the dwelling unit at reasonable hours, after reasonable notice to the tenant, in order to inspect the premises, make necessary or agreed repairs, decorations, alterations or improvements, supply necessary or agreed services, or exhibit the dwelling unit to prospective or actual purchasers, mortgagees, tenants, workmen or contractors.

(b) The Landlord may enter the dwelling without consent of the tenant in case of an extreme hazard involving the potential loss of life or severe property damage.

make it a superseding cause of the loss of the stolen chattels." Comment c. Analogously, the plaintiff in the instant case locked her door to keep out unwanted people, including Carpenter. By unlocking the plaintiff's door, Dixon provided an opportunity for Carpenter's criminal acts. That Dixon did not *know* that Carpenter might attack the plaintiff is not conclusive; it is enough that there are sufficient facts to support a finding

that Dixon *should have known* that violence against the plaintiff was a reasonably foreseeable event.

**7.** Section 302B has likewise been adopted by the Kansas Supreme Court. *Citizens State Bank*, 609 P.2d at 678.

(c) The landlord shall not abuse the right of access or use it to harass the tenant.

This statute underscores the privacy of the tenant. The landlord is only authorized to enter for limited purposes and is only allowed nonconsensual entry for extreme reasons. Although not specifically mentioned, the landlord's authority to allow others access to dwellings can be assumed to carry, at a minimum, the same restrictions. These restrictions are imposed to guarantee the safety of the tenants, the security of their possessions, and their privacy in the home.

In the instant case, the injury was of the type that the landlord-tenant relationship and the locks on the plaintiff's door were meant to protect against. *See, e.g., Lay v. Dworman,* 732 P.2d 455 (Okla.1986) (finding that plaintiff pled a prima facie case of negligence against apartment owner where tenant was assaulted in her apartment after she informed owner lock was broken, owner failed to fix lock, and owner knew of criminal activities in the complex); *Kendall,* 236 F.2d 673 (finding apartment complex liable for assault where landlord hired and allowed painter access to apartment where tenant was assaulted). Here, a jury could find that an employee of the management company acted in such a way that he provided the opportunity for Carpenter to assault the plaintiff. There is at least a jury question whether, by unlocking the plaintiff's door, Dixon "defeat[ed] a protection which [the plaintiff] placed around [her] person or property for the purpose of guarding them from intentional interference." Restatement of Torts Second, § 302B, Comment e.

Accordingly, under Kansas law, as well as Sections 448 and 449 of the Restatement Second of Torts, a jury might find Dixon's actions to have been the proximate cause of the plaintiff's injury. Therefore summary judgment was inappropriate.

## CONCLUSION

For the foregoing reasons, we hold that the trial court's grant of summary judgment was erroneous. Accordingly, we REVERSE and REMAND for further proceedings not inconsistent with this opinion.